84 N.J. Super. 304 (1964)
201 A.2d 762
CHARLES J. CLARKE, JR., PLAINTIFF,
v.
CAMDEN TRUST COMPANY, A NEW JERSEY CORPORATION, AND ISABELLE DENNING, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided June 22, 1964.
*306 Mr. Lawrence N. Park attorney for plaintiff.
Mr. George D. Rothermel attorney for defendant Camden Trust Company.
PASCOE, J.C.C. (temporarily assigned).
Plaintiff, a member of the New Jersey Bar, maintained two demand checking accounts in defendant bank. One account was an attorney's account (general account) and the other was a trust account (for clients). Defendant Isabelle Denning, plaintiff's secretary, forged his signature to checks drawn on defendant bank during the period August 1957 through August 1961. Plaintiff notified the bank of the forgeries on November 3, 1961 following the mysterious disappearance of Miss Denning.
The present suit is to recover $12,403.07 for some 41 checks bearing plaintiff's forged signature. At the pretrial conference it was agreed that the two-year limitation provided in N.J.S.A. 17:9A-226 was applicable to 33 of the 41 checks, and the pretrial order provided for an amendment of the demand which reduced the claim to $4,525. A default judgment was entered against defendant Isabelle Denning, so that the remaining question for this court to determine is the liability of the bank.
The facts are that although plaintiff received monthly statements charging his accounts with the forged checks, nevertheless the criminal acts of Miss Denning went undiscovered over the years. She would draw a check to her own order on plaintiff's printed checks and forge his signature. Her ordinary duties included making deposits, drawing checks for signature, and periodically making reconciliations of bank statements. From August 16, 1957 to May 22, 1958 Miss Denning possessed a power of attorney to withdraw funds from the attorney's account on her own signature.
Plaintiff left the reconciliation of bank statements to his trusted secretary and only conducted superficial spot checks personally. He stated that he was only concerned with whether the bank balance was in reasonable shape, and the *307 few checks he did examine were recognized by him. He did not attempt to balance his books against the bank statements. Responding to an internal audit by the bank, plaintiff confirmed his balance as of March 31, 1961, although he did not know whether or not the balance was correct.
The vice-president in charge of the bank's record-keeping department testified that the bookkeepers did not take every check and compare the signature with the depositor's signature card. Such comparison was made only when there was something about the signature which caused it to be questioned. The bank's bookkeepers relied upon their recollection of the appearance of the signature.
The accounts for regular checking accounts were broken down into alphabetical segments. A bookkeeper was assigned to each segment. This person would sort the checks in complete alphabetical sequence and examine each check for date, formality, alterations, signature and endorsements. If satisfactory, the bookkeeper would post the check to the related account.
Each bookkeeper had a partner who worked on the adjacent section of the alphabet. After posting, the partners would exchange checks and repeat the entire process of posting as a safeguard against errors. This system of bookkeeping is called dual posting as opposed to a single posting by only one bookkeeper.
As noted, the only time there is an actual comparison of signature is where the bookkeeper questions the validity of the signature or whether the correct number of signatures appears.
A handwriting expert testified that the ordinary person could not detect the forgeries involved in this case. This would be true even if the person compared the signatures on the checks with the master signature card.
A vice-president of the First Pennsylvania National Bank and Trust Company and a retired bank examiner testified that the procedures used by defendant bank during the period in question were in accord with the general usage and practice *308 in similar banks. Indeed, the bank examiner mentioned that it had been 35 to 40 years since banks made a comparison of signature on every check. The reason for this procedure is rather obvious when one considers that each bookkeeper handles approximately 1,000 checks a day  a figure which, according to various banking experts, is a normal volume of work per bookkeeper.
The law dealing with a bank's liability to its depositor when forgery of the depositor's signature results in honoring the forged check is well defined. A bank, to the extent that it pays a check bearing the forged signature of its depositor, pays out of its own fund and cannot charge the forged check to the depositor's account. A bank is bound to know the signatures of its depositors, and the payment of a forged check, however skillful the forgery, cannot be debited against the depositor if he is wholly free from neglect or fault. Harter v. Mechanics National Bank, 63 N.J.L. 578 (E. & A. 1899); 10 Am. Jur.2d, § 603, p. 568 (1963); 9 C.J.S. Banks and Banking, § 356a, p. 730; Britton, Bills and Notes (2d ed. 1961), pp. 362-375.
The bank is relieved from this strict liability where its payment of forged checks is caused by the negligence of its depositor and where the bank is free from negligence. Airco Supply Company v. Albuquerque National Bank, 68 N. Mex. 195, 360 P.2d 386 (Sup. Ct. 1961); Wright v. Bank of America Nat. Trust & Sav. Assoc., 176 Cal. App.2d 176, 1 Cal. Rptr. 202, 76 A.L.R.2d 1293 (D. Ct. App. 1959); Wussow v. Badger State Bank of Milwaukee, 204 Wis. 467, 234 N.W. 720 (Sup. Ct. 1931), rehearing denied 236 N.W. 687 (1931); Leff v. Security Bank, 93 Misc. 139, 157 N.Y.S. 92 (1916).
7:2-23 provides:
"Where a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party, against *309 whom it is sought to enforce such right, is precluded from setting up the forgery or want of authority."
The term "precluded" as used in this statute includes the negligence of the depositor in failing reasonably to examine returned checks and vouchers. Leather Manufacturers' Nat. Bank v. Morgan, 117 U.S. 96, 6 S.Ct. 657, 29 L.Ed. 811 (1886); Johnson v. First Nat. Bank of Beaver Falls, 367 Pa. 459, 81 A.2d 95 (Sup. Ct. 1951).
A depositor violates the duty he owes a bank when he neglects to do those things dictated by ordinary business customs and prudence and fair dealing toward a bank, and which, if done, would have prevented the wrongdoing. Screenland Magazine v. National City Bank, 181 Misc. 454, 42 N.Y.S.2d 286 (Sup. Ct. 1943); Morgan v. United States Mortgage & Trust Co., 208 N.Y. 218, 101 N.E. 871, L.R.A., 1915 D, 741 (Ct. of App. 1913).
Each month, from 1957 to 1961, defendant bank sent to plaintiff a statement of his account. On each printed statement there was the following direction:
"Please examine at once  if no error is reported within ten days the account will be considered correct."
In addition, there is to be found on the signature card signed by plaintiff,
"I hereby agree to the Rules and Regulations of Camden Trust Company."
The depositor must examine his cancelled checks and statements received from the bank and notify the bank promptly of any irregularities. If this is omitted by the depositor, any further losses occurring as a result of such omission must be borne by the depositor unless the bank itself is guilty of contributory negligence. Pannonia B. & L. Ass'n v. West Side Trust Co., 93 N.J.L. 377 (E. & A. 1919); Forbes v. First Camden Nat. Bank & Trust Co., 25 N.J. Super. 17 (App. Div. 1953); Brunswick Corp. v. Northwestern Nat. Bk. & T. Co., 214 Minn. 370, 8 N.W.2d 333, 146 *310 A.L.R. 833 (Sup. Ct. 1943); Basch v. Bank of America Nat. Trust & Savings Ass'n, 22 Cal.2d 316, 139 P.2d 1 (Sup. Ct. 1943). Airco Supply Company v. Albuquerque National Bank, supra.
In Stumpp v. Bank of New York, 212 App. Div. 608, 209 N.Y.S. 396 (Sup. Ct. 1925), the depositor was required to take at least three steps in reconciliating the bank statement with his own records: (1) compare vouchers returned by the bank with check stubs in his stub book. (2) compare balance entered in statement or passbook with balance in stub book, and (3) compare returned vouchers with list of checks entered in statement or check list.
The depositor's duty of verification and reconciliation of returned check vouchers can be delegated to an employee who has proven himself competent and trustworthy. The majority rule is that a depositor cannot be charged with knowledge which the employee has, when that same employee is the forger. However, any information which would have come to light if the employee was unconnected with the forgery and a reasonable examination conducted, is chargeable to the depositor. Leather Manufacturers' Nat. Bank v. Morgan; Wussow v. Badger State Bank of Milwaukee, and Basch v. Bank of America Nat. Trust & Savings Ass'n, supra.
The mere fact that the forgery was committed by a confidential employee or agent of the depositor does not enable the bank to shift the loss of the depositor, in the absence of some circumstances raising an estoppel against the depositor. Hernandez v. First Nat. Bank of Omaha, 125 Neb. 199, 249 N.W. 592 (Sup. Ct. 1933); 10 Am. Jur.2d § 604, pp. 569-570 (1963).
While the bank must also use reasonable and proper methods to detect the forgeries, the tellers and bookkeepers of the bank are not held to a degree of expertness which a handwriting expert possesses. Leather Manufacturers' Nat. Bank v. Morgan, Screenland Magazine v. National City Bank, Basch v. Bank of America Nat. Trust & Savings Ass'n, and Airco Supply Company v. Albuquerque National Bank, supra.
*311 In Clyman v. Glasser, 240 N.Y.S.2d 532, 39 Misc.2d 198 (Sup. Ct. 1963), the court stated:
"* * * Obviously `reasonable care' cannot call for the services of a handwriting expert as to every check that passes over the counter of a large busy city bank. Nor does it even call for `expertness' on the part of tellers; but it does call for prudence. There was expert testimony in behalf of the plaintiffs, which I accept, that the forgeries were of such a nature that an average teller, even one without training in handwriting or in detecting forgeries, should have noticed them, checks and withdrawal slips. `All that was needed was comparison of the signatures.' * * *" (240 N.Y.S.2d, at pp. 537-538)
In Standard Acc. Ins. Co. v. Montclair Trust Co., 31 N.J. Super. 253 (Law Div. 1954), the court refused to follow the proposition of plaintiff's counsel that whenever a bank has papers in its possession which enable it to check signatures, no matter what department of the bank those papers are in, and it fails to check the signatures, it is then estopped.
An account stated may always be impeached for mistake. It is only prima facie evidence of its correctness. Forbes v. First Camden Nat. Bank & Trust Co., and Wussow v. Badger State Bank of Milwaukee, supra.
It is the contention of defendant bank that plaintiff is estopped from asserting a claim against it because of his negligence in failing to discover the forgeries through a reasonable examination of returned checks and vouchers. N.J.S.A. 17:9A-226(C). Miss Denning was the sole person who reconciled the cancelled checks with plaintiff's books and records fully. Plaintiff's supervision was only on a spot check basis and was inadequate for the purposes of N.J.S.A. 17:9A-226(C).
Under the ruling in Pannonia B. & L. Asso. v. West Side Trust Co., supra; First Nat. Bank of Birmingham v. Allen, 100 Ala. 476, 14 So. 335, 27 L.R.A. 426 (Sup. Ct. 1893), and First National Bank of Richmond v. Richmond Electric Co., 106 Va. 347, 56 S.E. 152, 7 L.R.A., N.S., 744 (Sup. Ct. of Appeals 1907), if a depositor assigns the duty of examining *312 the returned checks and vouchers to the employee who committed the forgery, the employee is the agent of the depositor in examining the vouchers and the depositor is chargeable with the agent's knowledge of the fraud.
This above is the minority rule and differs from the so-called majority view in that the depositor is bound in most jurisdictions by the knowledge that a competent and honest employee should have acquired. Leather Manufacturers' Nat. Bank v. Morgan, Wussow v. Badger State Bank of Milwaukee, and Basch v. Bank of America Nat. Trust & Savings Ass'n, supra.
Under either rule the plaintiff did not meet the required standard of care under the reconciliation procedures used by him and his employee. Any competent and honest employee would have discovered in any kind of reasonable examination that there were no vouchers or office records that justified payment of the forged checks. The yearly audit made for income tax purposes by plaintiff's accountants did not satisfy the requirements of a reasonable bank reconciliation.
Defendant bank has not only proven the negligence of plaintiff but also has shown that there was no negligence on its part in honoring the forged checks. Each check was regular on its face, and each forged signature was a reasonable facsimile of the genuine signature. Plaintiff would have this court require the banks of this country to bear absolute liability as the alternative to costly procedures of comparing the signature on each instrument with the signature card. The court finds that this procedure would result in prohibitive costs to defendant bank and should not be required.
The court finds the checks sued upon were forged and were improperly paid by the bank. However, the depositor was guilty of negligence in his methods of reconciliation of bank statements and cannot recover against the bank. The bank, on its part, used proper care in its bookkeeping procedures and is not guilty of negligence.
Judgment for defendant bank.