FIRST NATIONAL BANK AND TRUST COMPANY, A CORPORATION, APPELLANT, V. JOHN L. CUTRIGHT, APPELLEE.

205 N. W. 2d 542

Filed March 23, 1973. No. 38610.

Pilcher, Howard & Dustin, for appellant.

John L. Cutright, pro se.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

SMITH, J.

The district court on a general finding rendered judgment for a customer-drawer and against the drawee bank under sections 3-406 and 4-406 (1), (2), and (3), U. C. C. On appeal the main question is the sufficiency of evidence of lack of ordinary care on the part of the bank in paying checks with unauthorized signatures of the drawer.

A trial court without being clearly wrong might find these facts. John L. Cutright, the customer-drawer, maintained 4 checking accounts with the drawee, First National Bank of Fremont. His only employee from April 21, 1969, to March 31, 1970, was Lynda McPherson. Without authority she signed 44 checks payable to her from Cutright's personal account with First National by using a rubber stamp with a script signature of Cutright as drawer. She uttered the checks with her blank endorsements. The stamp was so old that Cutright, who at the time of trial in 1972 had been practicing law 48 years, could not remember when he had obtained it. His office girl had been using it daily in signing letters

and legal papers. Neither Lynda nor her predecessors possessed authority to stamp checks. Cutright himself had never drawn a check by using the stamp, and the signature card of the account did not mention a facsimile. Cutright's personal account was active as follows:

| Date of Bank Statement | Debits: Lynda's Unauthorized Signatures | | Other Debits | |
|---|---|---|---|---|
| | No. | Sum | No. | Sum |
| 9-30-69 | 1 | $  200.00 | 17 | $  330.77 |
| 10-31-69 | 8 | 788.50 | 18 | 297.38 |
| 11-29-69 | 8 | 1,274.50 | 13 | 609.64 |
| 12-31-69 | 11 | 2,049.50 | 15 | 547.54 |
| 1-31-70 | 10 | 2,000.00 | 12 | 448.04 |
| 2-28-70 | 6 | 1,200.00 | 20 | 2,233.30 |

Lynda having been reconciling the records, Cutright discovered the unauthorized checks after noticing the unusually small balance on the February statement. During her employment she had prepared 681 checks that Cutright had drawn on the 4 accounts with defendant, and 206 had been personal checks. She also destroyed the 44 checks in question.

Genuine signatures of Cutright appeared on the signature card of the personal account in the year 1938 and on 4 checks drawn on the account in August 1969. An accurate description or reproduction of the checks in our publication would be impossible.

The First National maintained more than 6,000 deposits, and its daily check and deposit transactions ranged from 4,000 to 6,000. In its business practice the teller examined the drawer's signature. After photography a clerk compared the check with the signature card. Checks and debits on the statement of account were counted several times. Any irregularity noticed by the counter was reported to the manager of the bookkeeping department or to an officer of the bank. The difficulty of de-

tecting unauthorized signatures increased with the introduction of pens with felt tips which widened the lines.

Interrogatories to First National were answered by its cashier as follows: "Q. . . . What certainty . . . is there that . . . (the filing clerk) makes such comparison? A. The presumption that the employee does his duty, plus continued exhortation and instruction. Q. Is such a comparison dependent on her own disposition in that respect ? A. No. Q. Is any supervision made . . .? A. Yes. Q. . . . Would her failure be discovered by any one else in your institution? A. Yes. Q. Is any such supervision . . . continuous . . .? A. Continuous. Q. To what extent can your institution say that all checks are compared as to signatures with the signature card? A. A corporation, whose corporate knowledge is less than the sum of the knowledge of all its officers, agents, and employees, can only rely on the honesty and diligence of these people and presume that they do their duty, human error excepted."

The cashier of First National testified that its procedure for inspection was superior to reasonable commercial standards of banking. The cashier of the Fremont National Bank, which followed a similar practice, corroborated him. The Fremont bank had paid 7 checks drawn on Cutright's account with it and stamped by Lynda with the rubber stamp.

No direct evidence tended to show any of the following facts: (1) Specific instructions to employees on the subjects of handwriting or detection of unauthorized signatures or (2) the number of checks daily compared by each clerk with signature cards. No opinion testimony implied difficulty or ease of a competent clerk exercising ordinary care in detecting the unauthorized signatures made with the rubber stamp.

Under subsection (1) of section 4-406, U.C.C., a bank customer under certain conditions must exercise reasonable care and promptness to examine the bank's statement of account and items to discover his unau-

thorized signature or any alteration on an item and must notify the bank promptly after discovery thereof. Under subsection (2) if the bank establishes that the customer failed with respect to an item to comply with the duties imposed on the customer by subsection (1), the customer is precluded from asserting against the bank (a) his unauthorized signature or any alteration on the item if the bank also establishes that it suffered a loss by reason of such failure, and (b) an unauthorized signature or alteration by the same wrongdoer on any other item paid by the bank under certain circumstances. By subsection (3) the preclusion under subsection (2) does not apply if the customer establishes lack of ordinary care on the part of the bank in paying the item(s).

Lack of ordinary care on the part of the drawee bank in paying item(s) under subsection (3) of section 4-406, U.C.C., may be established by proof either that the bank's procedures were below standard or that the bank's employees failed to exercise care in processing the items. Clarke, Bailey, and Young, Bank Deposits and Collections, p. 121 (4th Ed., 1972); Penney, "Bank Statements, Cancelled Checks, and Article Four in the Electronic Age," 65 Mich. L. Rev. 1341 at 1350 (1967). The "burden of establishing" a fact means the burden of persuading the trier of fact that the existence of the fact is more probable than its nonexistence. § 1-201 (8), U. C. C.

Handwriting in question may be compared by the trier of fact with writing of the same person which is proved to be genuine. See, §§ 25-1128 and 25-1220, R. R. S. 1943; Penney, op. cit., at 1352.

In law actions conflicts in evidence or findings of fact will not be disturbed on appeal unless clearly wrong. State ex rel. Rittenhouse v. Newman, *ante* p. 657, 204 N. W. 2d 372.

The drawee bank in such circumstances as are before us has been said to be in a position fraught with danger in these respects. Filing clerks may be held to the standard of handwriting experts. It is considerably

·easier to detect a forgery among a collection of checks purportedly bearing the same signature than to recognize one isolated forged check in a batch of checks drawn ·by the customer. The cost of comparing signatures on the large volume of checks processed daily by many ·banks will increase; See, Penney, op. cit., at 1352 and ·1360; Comment, 12 Ariz. L. Rev. 417 (1970); Notes, 50 Boston U. L. Rev. 536 (1970).

Some of the dangers may have been present in this case. Any lack of ordinary care on the part of First National furthermore rested mainly upon the age and nature of the stamp and a comparison of the facsimile with the pen signatures. We nevertheless conclude that the evidence raised questions of fact under sections 3-406 and 4-406, (1), (2), (3), U.C.C. The finding by the district court was not clearly wrong.

AFFIRMED.

NEWTON, J., concurring.

The question of whether the bank acted "in accordance with the reasonable commercial standards of the drawee's or payor's business" as provided in section 3-406, U.C.C.; or if there was a "lack of ordinary care on the part of the bank in paying the item(s)" as provided in section 4-406, U. C. C., is one of fact. The trial court as the trier of fact in this very close case found the bank to be in violation of these provisions and since there is sufficient evidence to sustain this finding, I concur in the opinion of Smith, J.

BOSLAUGH and McCOWN, JJ., concurring.

This case presents a close question. The evidence of negligence on the part of plaintiff was minimal, consisting primarily of the fact that the signature was stamped. The evidence of negligence on the part of the defendant was substantial and contributed to the loss. See § 3-406, U.C.C., and comment 7. Nevertheless, the evidence presented a question for the trier of fact and the decision cannot be said to be clearly wrong.