JOHN J. BRESLIN, SOLE SURVIVING TRUSTEE OF THE TRUSTS CREATED BY THE LAST WILL AND TESTAMENT OF WILLIAM O. ALLISON, DECEASED, PLAINTIFF-APPELLANT, v. NEW JERSEY INVESTORS, INC., A NEW JERSEY CORPORATION, JENNY G. MARTIN, INDIVIDUALLY AND AS EXECUTRIX AND TRUSTEE UNDER THE LAST WILL AND TESTAMENT OF IVAR MARTIN, DECEASED, *ET AL.*, DEFENDANTS-RESPONDENTS.

Argued May 25, 1976—Decided June 23, 1976.

Mr. *James A. Major* argued the cause for Plaintiff-Appellant (*Messrs. Major & Major,* attorneys).

Mr. *Richard J. Sauerwein* argued the cause for Defendants-Respondents.

Mr. *William F. Hyland,* Attorney General of New Jersey, filed a Statement in Lieu of Brief (*Mr. Stephen Skillman,*

Assistant Attorney General, of counsel; *Mr. Walter S. Ameika, Jr.,* Deputy Attorney General, on the brief).

The opinion of the Court was delivered by

·CONFORD, P. J. A. D., Temporarily Assigned. Plaintiff, as the sole surviving testamentary trustee of the William O. Allison estate, brought this action to recover for the conversion of assets of the estate. The Chancery Division held there was no cause of action against respondent Jenny G. Martin and her husband, Roy I. Martin, who had received a check on funds belonging to plaintiff's trust estate in payment for a mortgage sold by the Martins to the late Walter D. Van Riper under circumstances to be related. The Chancery Division held that the Martins were free from liability, *inter alia,* as holders in due course of the check in question. The Appellate Division affirmed for the reasons stated in the oral conclusions of the trial judge. We granted certification, 68 *N. J.* 489 (1975), and now affirm.

Plaintiff and Van Riper, a since deceased member of the New Jersey bar, were testamentary trustees under the will of William A. Allison, deceased. All of the assets of the trust were held by a New Jersey corporation, Allison Land Company. Title to the shares of that corporation was in the names of the trustees as such. At the same time Van Riper was sole owner of all the shares of a New Jersey corporation named New Jersey Investors, Inc.

On January 30, 1970 Van Riper telephoned Daniel Amster, the attorney for the Martins, expressing an interest in acquiring a mortgage held by the Martins on property owned by people named McGowan. Amster answered this inquiry by letter on February 2, 1970 informing Van Riper that the principal balance on the mortgage was $34,444.88, together with interest from November 28, 1969 at 6%. After another telephone call from Van Riper, Amster sent Van Riper on June 5, 1970 photocopies of the mortgage and of the Last Will and Testament of the late Ivar Martin. In his cover

letter, Amster solicited suggestions from Van Riper as to the manner in which the mortgage might be assigned.

Van Riper wrote Amster on June 9, 1970 acknowledging receipt of the letter of June 5 with its enclosures, and saying:

"I am prepared to take over the assignment of this mortgage and would suggest doing so as of the 16th instant * * * I suggest you let me have the exact amount that will be due as of the 16th and I will have a certified check for you. The assignment should run to New Jersey Investors, Inc., a New Jersey corporation."

Van Riper's June 9 letter and all subsequent correspondence from him were on his law firm stationery.

On June 12, 1970, Amster's office forwarded to Van Riper an original and a copy of an assignment of the McGowan mortgage made out to New Jersey Investors, Inc. as assignee. Also enclosed were an original and copy of an estoppel certificate, and the original bond and mortgage. These documents were to be held in escrow by Van Riper until receipt by Amster of $36,812.40.

On June 16, 1970 Van Riper wrote Amster's office acknowledging receipt of the above documentation and stating that: "In payment thereof, I am enclosing herewith our check to the order of Jenny G. and Roy I. Martin in the sum of $34,156.01."[1] The letter further stated that, since the check was certified, Van Riper was proceeding to record the assignment. The check enclosed with Van Riper's letter was drawn on the account of Allison Land Company, 744 Broad Street, Newark, New Jersey, and was signed by Walter D. Van Riper, as President, and Gerald J. Kent, as Secretary. It was dated June 16, 1970 and contained the notation, "Mortgage purchase".

Amster's secretary forwarded the check to Roy I. Martin under cover letter dated June 17, 1970, explaining that it

---

[1] The lesser amount, a difference of $2,656.39, was due to a deduction for taxes and is not in dispute.

represented the amount due from New Jersey Investors, Inc. for the mortgage which had been assigned. A copy of this letter was sent to Van Riper who acknowledged it on June 18.

Amster wrote to the McGowans (the mortgagors) on June 17, 1970, advising them that their mortgage had been assigned to New Jersey Investors, Inc. and that all payments were to be made to that entity and mailed to its attorney, Walter D. Van Riper, Esquire. Subsequently, the McGowans sold their property and New Jersey Investors was given a check for the amount due on the mortgage.

Thereafter Van Riper died and New Jersey Investors, Inc. became insolvent. Plaintiff brought this action in 1973 against the Van Riper estate, New Jersey Investors, Inc., the Martins and Amster on the theory that they had all participated in the conversion of the trust funds represented by the Allison Land Company check executed by Van Riper. It was plaintiff's position in the trial court and on appeal that Amster and the Martins were on notice that Allison Land Company funds were being used by Van Riper for the purchase of a mortgage for the benefit of a different entity, *i. e.*, New Jersey Investors, Inc., and that such knowledge was sufficient to charge them with liability as converters for the misapplication of the Allison (estate) funds even if they were without actual knowledge that the transaction was in fraud of the estate.

It should be made clear at this point that no contention is made that Amster and the Martins acted other than honestly and in good faith in this transaction — without knowledge that the Allison estate was being mulcted by Van Riper for his own benefit.

After trial, the Chancery Division judge entered judgment against the Van Riper estate and New Jersey Investors, Inc. for the amount of the check but dismissed the complaint against Amster and the Martins. He held they were not placed on inquiry of any wrongdoing in the transaction because they did not know that Allison Land Company was a

trust, Van Riper had an excellent reputation, and it was not suspicious for one corporation to make payment for another. He also held the Martins to be holders in due course of the check.

In affirming, we find it sufficient, in exculpation of the Martins, that they were holders in due course of the Allison Land Company check, and, as to Amster, that he was merely their attorney in the negotiation of the transaction, without actual knowledge of any wrongdoing, and therefore cloaked with the same immunity in the matter as the Martins.

█ Under the Uniform Commercial Code (effective in this State January 1, 1963), a holder in due course is a holder who takes the instrument (a) for value, (b) in good faith and (c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person. *N. J. S. A.* 12A:3–302(1). As payees, the Martins were qualified for the status of holders in due course. *N. J. S. A.* 12A:3–302(2).

█ "Good faith" is defined by the Code as "honesty in fact in the conduct or transaction involved". *N. J. S. A.* 12A:1–201(19). Good faith in this context "is determined by looking to the mind of the particular holder". *General Investment Corp. v. Angelini,* 58 *N. J.* 396, 403 (1971), citing New Jersey Study Comment 1B to *N. J. S. A.* 12A:3–302, at p. 134; 12A:1–201(19). The study comment points out that under the predecessor Uniform Negotiable Instruments Law various tests of good faith evolved, most courts, including New Jersey's, having adopted the so-called "white heart" criterion. "Under this test, good faith is determined by looking to the mind of the particular holder who is claiming to be a holder in due course, not what the state of mind of a prudent man should have been". Study Comment 1B to *N. J. S. A.* 12A:3–302, *supra,* at p. 134. The prior New Jersey law on the point was held to have carried over to the Code and its substance summarized by this court in the *Angelini* case, *supra,* as follows (58 *N. J.* at 403):

The test is neither freedom from negligence in entering into the transaction nor awareness of circumstances calculated to arouse suspicions either as to whether the instrument is subject to some defense not appearing on its face or whether the promise to pay is not as unconditional as it appears therein. *Joseph v. Lesnevich,* 56 *N. J. Super.* 340, 348 (App. Div. 1959).

And see *Rice v. Barrington,* 75 *N. J. L.* 806 (E. & A. 1908); *Driscoll v. Burlington-Bristol Bridge Co.,* 8 *N. J.* 433 (1952).

In *Unico v. Owens,* 50 *N. J.* 101, 109–110 (1967) we said:

In the field of negotiable instruments, good faith is a broad concept. The basic philosophy of the holder in due course status is to encourage free negotiability of commercial paper by removing certain anxieties of one who takes the paper as an innocent purchaser knowing no reason why the paper is not as sound as its face would indicate.

The actual holdings in *General Investment Corp. v. Angelini* and *Unico v. Owen,* both *supra,* denied holder-in-due course status. However, the plaintiffs in those cases were companies engaged in consumer goods financing who were cognizant of accompanying contract documents between seller and purchaser. That fact, in the light of distinct public policy considerations transcending the status of ordinary purchasers of commercial paper, was held to justify imputation of notice of the defenses of the original obligors of the notes negotiated to the plaintiffs. See 50 *N. J.* at 118, 122–123; 58 *N. J.* at 404. The holdings in those cases are not apposite here. In this case Amster and the Martins had no knowledge whatever as to the underlying relationships of the corporations involved to Van Riper or to any trust estate or as between themselves. As holders for value of a negotiable instrument, taken in good faith, the Martins were entitled to assume that the check of Allison Land Company was being issued for or in connection with the proper purposes of that corporation.

Plaintiffs' whole position in this matter is that the fact alone that Allison Land Company issued a check as

ostensible payment for a security instrument being transferred to a different corporation sufficed as notice of injury to Allison Land Company effective to fasten liability for conversion upon defendants. But it is obvious that if these circumstances would not have constituted a defense by Allison to an action on the check by the Martins because of their status as holders in due course they are equally inoperative to visit tort liability upon the Martins consequent upon exercise of their right as holders in due course to realize upon the check, as they here did.

The stated circumstances did not constitute notice of infirmity, within the holder-in-due-course rule:

"* * * proof of circumstances calculated merely to arouse suspicion will not defeat recovery on a negotiable note taken for value before maturity. Bad faith, *i.e.*, fraud, not merely suspicious circumstances, must be brought home to a holder for value whose rights accrued before maturity in order to defeat his recovery on a negotiable note upon the ground of fraud in its inception or between the parties to it."

*Rice v. Barrington, supra*, 75 *N. J. L.* at 807, quoted in *Driscoll v. Burlington-Bristol Bridge Co., supra*, 8 *N. J.* at 480.

We should point out that plaintiff cannot in this case take any benefit from *N. J. S. A.* 12A:3–304, which provides, in part:

(2) The purchaser has notice of a claim against the instrument when he has knowledge that a fiduciary has negotiated the instrument in payment of or as security for his own debt or in any transaction for his own benefit or otherwise in breach of duty.

There was nothing in this transaction which afforded "knowledge" to the Martins or to Amster that trust property was being transferred or that Van Riper was acting for his own benefit as distinguished from that of the corporations involved.

Judgment affirmed.

*For affirmance*—Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD and SCHREIBER and Judge CONFORD—7.

*For reversal*—None.