267 N.J. Super. 202 (1993)
630 A.2d 1207
FRANK DUBIN, PLAINTIFF,
v.
HUDSON COUNTY PROBATION DEPARTMENT, DEFENDANT.
Superior Court of New Jersey, Law Division Special Civil Part, Essex County.
Decided June 21, 1993.
*205 Frank Dubin, plaintiff, pro se.
Tomas R. Paneque for defendant.
FAST, J.S.C.
Plaintiff, the owner and operator of a check cashing business, sued the Hudson County Probation Department. Plaintiff seeks payment for three checks, apparently issued by defendant, which plaintiff cashed, and which were subsequently returned unpaid by the bank. (Venue was transferred from Hudson County to Essex County.) The facts are undisputed.
Three individuals each presented to plaintiff's employee a check from the Hudson County Probation Department, dated 3/13/92, to cash them. Upon the individuals having presented identification, plaintiff cashed each check in the amounts of $334.50, $183.00, and $360.50. When plaintiff thereafter presented the checks to the drawer bank, the checks were returned to plaintiff with a stamp indicating the subject account had been closed. The bank charged a fee to the plaintiff of $10.00 per each returned check, and plaintiff includes this fee in the amount claimed here.
Prompted by the return of the checks, plaintiff contacted the County Police and an investigation ensued. The account had been closed and zeroed out on October 1, 1991. The boxes of unused, blank, unendorsed checks were locked in a storage room. Several months after the account had been closed, the Probation Department acquired a paper shredder, and an employee working as a mail clerk was instructed to shred the blank checks.
The shredding was done in the mail room, which room was locked every day from 4:00 p.m. to 9:00 a.m., but unlocked from 9:00 a.m. to 4:00 p.m. while the mail clerk was working in the room. The mail clerk's duties required him to leave the mail room to run errands and, apparently, the door to the mail room was *206 closed but unlocked during these periods. While there has yet to be a determination of exactly how or when the checks were stolen from the Probation Department, it is believed that the checks were stolen from the mail room at some time during the day while the room was unlocked and unattended.
Plaintiff alleges gross negligence by defendant in two regards. First, plaintiff states defendant was grossly negligent in causing a delay of several months in destroying the checks from the closed account. Secondly, plaintiff alleges that defendant was grossly negligent in leaving the room, where the blank checks were being shredded, unlocked and unattended.
Generally, defendants deny any negligence, but state that if there was negligence it was "simple" negligence and did not rise to the level of gross negligence. Additionally, defendants argue the comparative negligence of plaintiff, in failing to verify the check before having cashed it. Finally, defendant states that they are immune from liability under the Tort Claims Act, N.J.S.A. 59:2-1 to 59:12-3.
The cause of action sounds in two forms: negligence and contract. The complaint alleges the gross negligence of the defendant, while the cause of action is based on commercial paper and purely statutory law of the Uniform Commercial Code. Analysis of the cause under both theories provides different results, because the theory of comparative negligence applies in cases of negligence, but is not a defense in a contract action. Thus, if the cause of action is based on defendant's alleged negligence, any comparative negligence of plaintiff would diminish plaintiff's recovery or, if plaintiff's negligence was greater than defendant's negligence, would bar recovery by plaintiff. N.J.S.A. 2A:15-5.1. I find the case, while making allegations of negligence, addresses a strictly contractual issue, and is founded solely in statutory law and its interpretation. The underlying issue presented by the facts here, whether plaintiff/payor can recover from defendant the value of the cashed checks, stolen from defendant and drawn on a closed account, is based in the law of commercial paper. Allegations *207 of negligence are relevant only as far as the Uniform Commercial Code addresses negligence in connection with stolen checks, and forged or unauthorized signatures. Thus, any argument based on plaintiff's comparative negligence is irrelevant.
The Uniform Commercial Code protects the rights of a holder in due course. A holder in due course is one who takes an instrument for value, in good faith, and without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person. N.J.S.A. 12A:3-302. If an individual qualifies as a holder in due course, the instrument is taken free from all claims to it on the part of any person and all defenses of any party to the instrument with whom the holder has not dealt, with certain stated exceptions. N.J.S.A. 12A:3-305. The rule only excepts certain defenses, known as real defenses, as enforceable against a holder in due course in the absence of estoppel.
Plaintiff is a holder in due course in the case presented here. Plaintiff took the checks for value by paying out the full amount of each check to the named payees. What defendants chose to characterize as plaintiff's comparative negligence, may be considered, (under the terms of the UCC), as a lack of good faith, which would prevent plaintiff from qualifying as a holder in due course. Defendant alleges that plaintiff did not apply the usual commercial standards in conducting his business, because he did not call the Hudson County Probation Department to verify the check prior to cashing it.
"Good faith" means honesty in fact in the conduct or transaction concerned. N.J.S.A. 12A:1-201(19). Plaintiff testified that his customary practice is not to call to verify each check because of the volume of checks cashed each month. Plaintiff maintains a listing of companies for whom he will cash checks, and verifies checks from unknown companies, usually by calling the payor/bank to verify that there are sufficient funds in the account. An additional criteria used by plaintiff, in determining whether to call the maker, is the size of the check, but plaintiff testified that the amounts here were not large enough to prompt him to call. I *208 find that the customary practices of plaintiff constitute a showing of good faith.
"Good faith is determined by looking to the mind of the particular holder." General Investment Corp. v. Angelini, 58 N.J. 396, 403, 278 A.2d 193 (1971), citing New Jersey Study Comment 1B to N.J.S.A. 12A:3-302, at p. 134; Breslin v. New Jersey Investors, Inc., 70 N.J. 466, 471, 361 A.2d 1 (1976). The study comment points out that most courts, including New Jersey's, have adopted the "white heart" test, where good faith is determined by looking to the state of mind of the particular holder who is claiming to be a holder in due course, not what the state of mind of a prudent man should have been. Breslin, supra at 471, 361 A.2d 1. "The test is neither freedom from negligence in entering into the transaction nor awareness of circumstances calculated to arouse suspicions either as to whether the instrument is subject to some defense not appearing on its face or whether the promise to pay is not as unconditional as it appears therein." General Investment Corp., supra 58 N.J. at 403, 278 A.2d 193, citing Joseph v. Lesnevich, 56 N.J. Super. 340, 348, 153 A.2d 349 (App. Div. 1959). The test is a subjective standard, and given the above stated facts, there is no evidence presented which indicates that plaintiff was aware or even had any reason at all to suspect that a fraud was being perpetrated.
Defendant argues that the face of the checks themselves should have put plaintiff on notice that the checks were forgeries. As examples of the differences in the forged checks from real checks, defendant points to the signature stamp of an unknown person, that the check is completed by a typewriter and not the normal computer generated print, and that the signature is not printed in tricolor as with the authentic checks of the department. Defendant testified that because plaintiff had cashed Hudson County Probation Department checks in the past, these differences should have been noticed.
I find that plaintiff's having cashed Hudson County Probation Department checks in the past is evidence of plaintiff's good faith *209 belief in the authenticity of these checks, rather than proof that plaintiff had constructive notice of the forgeries. The Uniform Commercial Code states that a purchaser is on notice of a claim or defense to the instrument if it is "so incomplete, bears such visible evidence of forgery or alteration, or is otherwise so irregular as to call into question its validity, terms or ownership." N.J.S.A. 12A:3-304. While I do not doubt that the differences cited by defendant in the forged checks were obvious and apparent to the payor, I find that they are not of such significance on the face of the checks as to alert one who sees thousands of different checks per month, in possibly equally as many different forms. It is unreasonable to hold plaintiff to remember the named signature on the check or the type or color of print. Given all of the above, I find that plaintiff is entitled to the rights of a holder in due course.
Accordingly, in finding that plaintiff has the status of a holder in due course, I find that under several provisions of the Uniform Commercial Code defendant is liable plaintiff. Generally stated, and most simply, if plaintiff is a holder in due course, the defense of theft must fail. N.J.S.A. 12A:3-305 and 3-306(d); O.P. Ganjo, Inc. v. Tri-Urban Realty Co., Inc., 108 N.J. Super. 517, 522-23, 261 A.2d 722 (Law Div. 1969).
N.J.S.A. 12A:3-115, addressing incomplete instruments states: "(2) If the completion is unauthorized the rules as to material alteration apply (12A:3-407), even though the paper was not delivered by the maker or drawer;"
N.J.S.A. 12A:3-407(1)(b) defines the unauthorized completion of an incomplete instrument as a material alteration. The rule further states: "(3) A subsequent holder in due course may in all cases enforce the instrument according to its original tenor, and when an incomplete instrument has been completed, he [sic] may enforce it as completed."
"A holder in due course sees and takes the same paper, whether it was complete when stolen or completed afterward by the thief, *210 and in each case he [sic] relies in good faith on the maker's signature. The loss should fall upon the party whose conduct in signing blank paper has made the fraud possible, rather than upon the innocent purchaser." Uniform Commercial Code Comment 5 to N.J.S.A. 12A:3-115.
Additionally, the Code provides that
[A]ny person who by his [sic] negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business. [N.J.S.A. 12A:3-406.]
Defendant argues that plaintiff's actions did not constitute reasonable commercial standards, but as I found above, plaintiff's actions were reasonable and in good faith. I find that to require plaintiff to verify every check, by calling every maker prior to cashing every check, would be commercially unreasonable and unduly burdensome. Nothing about the subject checks alerted plaintiff otherwise.
Defendant argues that plaintiff has not proven gross negligence, and that if defendant was negligent, it was only simple negligence. The language of N.J.S.A. 12A:3-406 does not support a distinction between gross and simple negligence. The phrase used in the statute, "substantially contributes," is plainly read to be a substantial contribution to the forgery rather than the negligence that must be substantial. Gast v. American Casualty Company of Reading, Pennsylvania, 99 N.J. Super. 538, 543, 240 A.2d 682 (App.Div. 1968). "The phrase `substantially contributes' indicates causal relationship and is the equivalent of the `substantial factor' test applied in the law of negligence generally." Id. at 544, 240 A.2d 682. What constitutes negligence depends upon the facts of each particular case. "The most obvious case is that of the drawer who makes use of a signature stamp or other automatic signing device and is negligent in looking after it." Uniform Commercial Code Comment 7 to N.J.S.A. 12A:3-406.
*211 I find the facts presented here to be equally obvious in showing defendant's negligence, as it applies under N.J.S.A. 12A:3-406 to bar defendant's assertions of unauthorized signatures and alterations of the checks. Defendant's actions, in not shredding the checks for several months and leaving the blank checks in a place where they were accessible to the public, are dispositive of defendant's negligence in contributing to the theft. Defendant could have (and should have) easily locked the door to the mail room when the room was unattended. Consequently, defendant's negligence "substantially contributed" to the theft, and thus, they are precluded from asserting the defense of forgery.
Defendant relies on the case of Brogan Cadillac-Oldsmobile Corp. v. The Central Jersey Bank and Trust Company, 183 N.J. Super. 333, 443 A.2d 1108 (Law Div. 1981), aff'd 190 N.J. Super. 500, 464 A.2d 1141 (App.Div. 1983). The Court held in Brogan that where checks were stolen from a bank vault and there was no evidence of negligence on the part of defendant/bank, the statute (N.J.S.A. 12A:3-406) did not apply. I find the present case factually distinguishable from Brogan.
In Brogan, the checks were stored in a bank vault, which was not located in an area open to the public and where only a limited number of people were authorized to enter. The checks were drawn on a different bank, and were mainly used by defendant bank for the payment of certain obligations. Defendant bank learned that two checks had been cashed in another area of the state, and thereafter discovered that a total of 22 prenumbered checks were missing from the vault. Neither the bank nor the police were able to ascertain how the checks came to be missing. The Court based its holding on the belief that it would be unjust to require one to anticipate that a crime will be committed unless there has been a warning or previous criminal act on the premises. Id. at 336, 443 A.2d 1108. Brogan found that the conduct of defendant bank was outside the law's conception of fault. Since there was no clear evidence that the stolen check was ever in the hands of the bank officials, and that it was just as likely that the *212 checks were stolen prior to being delivered to the defendant bank, the facts did not support a conclusion of negligence and the statute did not apply. Id. at 338, 443 A.2d 1108.
Here, the conduct of defendant supports a conclusion of fault on the part of defendant. The facts show that the checks were in defendant's possession after the account had been closed, and support a finding that they were stolen from defendant. The testimony was uncontested that the checks were stolen from the unlocked mail room. All of the sections of the Uniform Commercial Code cited above support the conclusion that plaintiff, as a holder in due course, is entitled to payment.
Defendant also argues that it is not liable based on the principles of the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 to 59:12-3, but I find that in this case the Tort Claims Act does not bar the action. "Nothing in this act shall affect liability based on contract ... against the public entity or one of its employees." N.J.S.A. 59:1-4. As stated above, I find that this was an issue based on contract concepts and the Uniform Commercial Code.
Accordingly, I find judgment for the plaintiff for $908.00 plus interest and costs.
The determination of the appropriate interest period is governed by N.J.S.A. 12A:3-122(4)(a), which provides:
Unless an instrument provides otherwise, interest runs at the rate provided by law for a judgment (a) in the case of a maker, acceptor or other primary obligor of a demand instrument, from the date of demand....
The date of demand is the date on which the checks were presented to drawee bank for payment. North Ave. East Check Cashing v. Aluf Plastics, Inc., 212 N.J. Super. 593, 515 A.2d 1253 (App.Div. 1986). Here, the checks were dishonored on May 20, 1992, and the running of the interest commenced then. The interest rate should be completed pursuant to R. 4:42-11 at 7.5% for 1992 and 5.5% for 1993.
Judgment shall be entered accordingly for plaintiff.