737 A.2d 690 (1999)
325 N.J. Super. 16
The TRAVELERS INDEMNITY COMPANY, a/s/o Stern, Lavinthal, Norgaard & Daly, Plaintiff-Appellant,
v.
Sobeyda Herrara GOOD, Daniel Trainor, Glenn Davis, Defendants, and
PNC Bank, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted[1] September 14, 1999.
Decided October 4, 1999.
*691 Franzblau Dratch, Livingston, for plaintiff-appellant (Stephen N. Dratch, on the brief).
Smith, Stratton, Wise, Heher & Brennan, Princeton, for defendants (Paul H. Shur and Scott C. Pyfer, of counsel and on the brief).
Before Judges MUIR, Jr., WALLACE, Jr., and CUFF.
The opinion of the court was delivered by *692 CUFF, J.A.D.
Plaintiff, The Travelers Indemnity Company as subrogee of Stern, Lavinthal, Norgaard & Daly, appeals from a summary judgment entered in favor of defendant PNC Bank. We reverse and remand for additional discovery regarding PNC's actual conduct as measured by its policy for check verification.
Between October 1996 and December 1996, defendant Sobeyda Herrara Good was employed as a bookkeeper for Stern, Lavinthal, Norgaard & Daly, a law firm. During that time, Good forged the name of an authorized signatory on eight checks totaling $76,975 drawn on the firm's trust account at PNC Bank. The eight checks were made payable to either defendants Daniel Trainor or Glenn Davis and were negotiated by them. PNC paid seven of the checks and charged the attorney trust account. The firm discovered the fraud in December 1996 and notified PNC. Pursuant to the terms of a fidelity insurance policy, Travelers compensated the firm for the loss.
As the subrogee of the firm, Travelers filed a complaint against defendants Good, Trainer, Davis and PNC to recover the loss. The complaint alleged PNC breached its contract of deposit with the law firm and violated applicable provisions of Articles 3 and 4 of the Uniform Commercial Code (UCC), N.J.S.A. 12A:3-101 to -605, 4-101 to -504, by improperly charging the account with the forged checks. Finally, the complaint alleged PNC failed to exercise ordinary care and failed to act in accordance with the reasonable commercial standards of the banking industry in its handling of the checks.
In due course, summary judgment was entered against defendants Good, Trainor and Davis. Further, on May 4, 1998, partial summary judgment was entered in favor of PNC Bank, and Travelers' claim that the bank had improperly paid three checks presented at the local branch totaling $24,475 was dismissed. Travelers conceded that the branch bank procedures were reasonable concerning those checks. As to the remaining five checks issued between October 28 and November 20, 1996, all of which had been cleared through the bank's central processing unit, Travelers was given additional time to conduct discovery of PNC "related to the operations and procedures utilized by PNC to pay checks cleared at its central processing unit in 1996."
PNC eventually provided this information to Travelers and renewed its motion for summary judgment. The undisputed facts before the motion judge revealed that PNC's check clearing policy for checks which passed through its central processing unit required verification of the signature on any check in excess of $5000. PNC also provided training to the employees in this department and mentors were assigned to employees to supervise and assist the verification process. In response, Travelers conceded that $5000 was a reasonable threshold to trigger verification of signatures. However, it argued that it required additional discovery to determine whether PNC complied with its procedures.
In granting PNC's motion for summary judgment, the motion judge found that the law firm had not reviewed its October statement and had it done so would have detected the forgeries and could have taken appropriate action to prevent the issuance of the two December checks. He concluded that the inaction of the firm constituted negligence and precluded recovery against PNC for this loss. As to the remaining checks, the motion judge identified the controlling issue as whether the bank acted in a commercially reasonable manner. He found that there was nothing in the record to suggest that the bank's procedures were not commercially reasonable and further held that Travelers' request for additional discovery was too late.
On appeal, Travelers argues that PNC was not entitled to summary judgment *693 because there was no evidence that it acted with ordinary care. It also contends that summary judgment was premature because discovery was incomplete. PNC responds that the law firm breached its duty to exercise reasonable care to prevent the forgeries and that further discovery would not enable Travelers to raise a genuine issue of material fact.
Summary judgment is appropriate if "there is no genuine issue as to any material fact challenged and ... the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). According to this rule, "[a]n issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." Ibid. The Court has explained as follows:
[W]hen deciding a motion for summary judgment under Rule 4:46-2, the determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.
[Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523, 666 A.2d 146 (1995).]
The Court explained further, "a non-moving party cannot defeat a motion for summary judgment merely by pointing to any fact in dispute." Id. at 529, 666 A.2d 146. Summary judgment is appropriate when the non-moving party only points "to disputed issues of fact that are `of an insubstantial nature.'" Ibid. (quoting Judson v. Peoples Bank & Trust Co., 17 N.J. 67, 75, 110 A.2d 24 (1954)).
The UCC provides that an item is properly payable if it is authorized by the customer. N.J.S.A. 12A:4-401a. An item is not properly payable if it contains a forged drawer's signature or forged endorsement. N.J.S.A. 12A:4-401, UCC Comment 1. See 2 James J. White and Robert S. Summers, Uniform Commercial Code, § 18-3 at 213 (4th ed.1995). The parties agree that the signature on the checks was unauthorized. See N.J.S.A. 12A:1-201(43). However, the parties disagree on where liability should attach.
Articles 3 and 4 of the UCC set forth the rights, duties and liabilities of banks and customers concerning commercial paper. Kraftsman Container Corp. v. United Counties Trust Co., 169 N.J.Super. 488, 492, 404 A.2d 1288 (Law Div.1979). Effective June 1, 1995, the UCC established a comparative negligence test in which losses are allocated between the customer and the bank if each has failed to comply with its respective duties. N.J.S.A. 12A:3-406 provides:
a. A person whose failure to exercise ordinary care substantially contributes to an alteration of an instrument or to the making of a forged signature on an instrument is precluded from asserting the alteration or the forgery against a person who, in good faith, pays the instrument or takes it for value or for collection.
b. Under subsection a. of this section, if the person asserting the preclusion fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss, the loss is allocated between the person precluded and the person asserting the preclusion according to the extent to which the failure of each to exercise ordinary care contributed to the loss.
c. Under subsection a. of this section, the burden of proving failure to exercise ordinary care is on the person asserting the preclusion. Under subsection b. of this section, the burden of proving failure to exercise ordinary care is on the person precluded.

*694 [N.J.S.A. 12A:3-406.]
See 2 White & Summers, supra, § 19-3 at 240 (discussing section 3-406).
The phrase "substantially contributes" is read to be "a substantial contribution to the forgery rather than the negligence that must be substantial." Dubin v. Hudson County Probation Dep't, 267 N.J.Super. 202, 210, 630 A.2d 1207 (Law Div.1993). It "indicates causal relationship and is the equivalent of the `substantial factor' test applied in the law of negligence generally." Gast v. American Cas. Co. of Reading Pa., 99 N.J.Super. 538, 544, 240 A.2d 682 (App.Div.1968). What constitutes negligence depends on the circumstances of each case. Ibid. See, e.g., Dubin, supra, 267 N.J.Super. at 211, 630 A.2d 1207 (not shredding checks from a closed account and leaving blank checks in a place accessible to the public precluded a defense of forgery).
"A lack of ordinary care on the part of the bank paying items under this provision of the UCC `may be established by proof either that the bank's procedures were below standard or that the bank's employees failed to exercise care in processing the items.'" New Jersey Steel Corp. v. Warburton, 139 N.J. 536, 546, 655 A.2d 1382 (1995) (quoting First Nat'l Bank & Trust Co. v. Cutright, 189 Neb. 805, 205 N.W.2d 542, 545 (1973)). "For a payor bank to escape liability, it must establish that it acted in accordance with reasonable commercial standards and exercised ordinary care." Ibid. A bank must use reasonable and proper methods to detect forgeries, but "the tellers and bookkeepers of the bank are not held to a degree of expertness which a handwriting expert possesses." Clarke v. Camden Trust Co., 84 N.J.Super. 304, 310, 201 A.2d 762 (Law Div.1964), aff'd o.b., 89 N.J.Super. 459, 215 A.2d 381 (App.Div.1965).
N.J.S.A. 12A:4-406 provides that if a bank makes available to its customer a statement of account, the customer has a duty to exercise "reasonable promptness" in examining the statement to discover any unauthorized signature or any alteration and to promptly notify the bank, if the customer should have reasonably discovered the unauthorized signature or the alteration. See Clarke, supra, 84 N.J.Super. at 308-12, 201 A.2d 762 (discussing the prior law dealing with a bank's liability to its depositor when forgery of the depositor's signature results in honoring the forged check). If a bank proves the customer failed to comply with this duty and the bank subsequently suffered a loss, the customer is precluded from asserting against the bank the customer's unauthorized signature or alteration on the item. N.J.S.A. 12A:4-406d(1). If the customer fails to report an unauthorized signature in breach of its duty and the bank subsequently pays other items in which the same wrongdoer is involved after the customer has had a reasonable time (not exceeding thirty days) to report the first item, the customer is precluded from asserting the alteration or unauthorized signature on subsequent items. N.J.S.A. 12A:4-406d(2).
If the customer is precluded but proves the bank failed to exercise ordinary care in paying the item and that failure substantially contributed to the loss, a comparative negligence test applies in which the loss is allocated between the customer and the bank. N.J.S.A. 12A:4-406e. If the customer proves the bank did not pay the item in good faith, the preclusion under 4-406d does not apply. Ibid. Without regard to care or lack of care the customer has one year within which to report the customer's unauthorized signature after receiving account statements. N.J.S.A. 12A:4-406f. See Villa Contracting Co. v. Summit Bancorp., 302 N.J.Super. 588, 595, 695 A.2d 762 (Law Div.1996) (holding the customer must be specific as to which items bear the forged signatures). See also2 White & Summers, supra, § 19-6 at 279 (discussing the customer's duty under section 4-406).
The definition of "ordinary care" is the same for sections 3-406 and 4-406. Ordinary *695 care in the case of a person engaged in business is defined as
observance of reasonable commercial standards, prevailing in the area in which the person is located, with respect to the business in which the person is engaged. In the case of a bank that takes an instrument for processing for collection or payment by automated means, reasonable commercial standards do not require the bank to examine the instrument if the failure to examine does not violate the bank's prescribed procedures and the bank's procedures do not vary unreasonably from general banking usage not disapproved by this chapter [Negotiable Instruments] or chapter 4 [Bank Deposits and Collections.]

[N.J.S.A. 12A:3-103a(7).]
Good faith means "honesty in fact and the observance of reasonable commercial standards of fair dealing." N.J.S.A. 12A:3-103(4).
In Globe Motor Car Co. v. First Fidelity Bank, 273 N.J.Super. 388, 399, 641 A.2d 1136 (Law Div.1993), aff'd o.b., 291 N.J.Super. 428, 677 A.2d 794 (App.Div.), certif. denied, 147 N.J. 263, 686 A.2d 764 (1996), relied on by the motion judge in the present case, the court determined that an employer who has entrusted the examination of his account to a dishonest employee who is in a position to conceal the fraud is liable in the case of forgery by that employee. The court opined, "[t]he employer that hires a thief must suffer the consequences of his or her misjudgment." Id. at 400, 641 A.2d 1136. See Brighton, Inc. v. Colonial First Nat'l Bank, 176 N.J.Super. 101, 112, 422 A.2d 433 (App.Div.1980) (loss should fall on the employer because the employer is in a position to prevent forgery by reasonable care in the selection or supervision of his employees or is at least in a better position to cover the loss by fidelity insurance), aff'd o.b., 86 N.J. 259, 430 A.2d 902 (1981); Rainbow Inn, Inc. v. Clayton Nat'l Bank, 86 N.J.Super. 13, 26, 205 A.2d 753 (App.Div.1964) (bank depositor is not relieved from its duty to examine bank statements by entrusting performance of that duty to an incompetent or dishonest agent, in the absence of reasonable diligence in supervising the agent's conduct). See also N.J.S.A. 12A:3-405 (employer's responsibility for fraudulent endorsements by an employee).
In Putnam Rolling Ladder Co. v. Manufacturers Hanover Trust Co., 74 N.Y.2d 340, 547 N.Y.S.2d 611, 546 N.E.2d 904 (1989), relied on by Travelers, the court addressed which party should bear the loss for a series of checks forged by plaintiff's bookkeeper and cashed by the bank. During the bench trial in Putnam, plaintiff introduced as evidence of the bank's negligence five non-forged checks cashed by the bank during the same period the forged checks were cashed. Each bore only one signature in violation of the bank's resolution requiring two signatures to clear the check. Id. at 905. A bank manager testified each clerk had approximately four seconds to inspect each check that was processed through the bookkeeping center. Ibid. The court noted the bank introduced no evidence of general banking usage with respect to check-clearing procedures. Ibid. After analyzing the shifting burdens of risk of loss in Articles 3 and 4 of the UCC, the court rejected application of comparative negligence principles and awarded plaintiff the full amount of its loss. Id. at 908.
As PNC correctly notes, Putnam is distinguishable from the present case because it applied a prior version of the UCC in which comparative negligence principles were absent. Furthermore, the prior version, unlike the current, did not define ordinary care. In that regard the New York Court of Appeals noted, "a customer could prove a bank lacked ordinary care by presenting any type of proof that the bank failed to act reasonably." Id. at 906. In Putnam, however, the evidence presented at trial delved into practice as well as procedure. The record established that clerks had only four seconds within which to examine checks. Here, the record contains *696 no more than a statement of PNC's policy.
Viewing the record in the light most favorable to Travelers, the non-moving party, we conclude that summary judgment was entered prematurely. Further, the undisputed facts of record do not clearly establish that the law firm's negligence bars all recovery for the loss.
Although Travelers does not contest the reasonableness of the check verification procedure for checks processed through the central processing center, it was entitled to explore whether the daily practice comports with the policy. Travelers was also entitled to explore whether the training provided for PNC employees was reasonably calculated to discover forged signatures. Having finally received the policy in June 1998, which Travelers originally requested in February 1998, we cannot consider Travelers' request for additional discovery as belated. Travelers' request for discovery was neither irrelevant nor late.
Further, the motion judge did not state for which checks recovery was barred by the law firm's negligence. Based on his comments at oral argument, he seems to refer to the checks issued in December 1996. However, Travelers had dismissed its claims against PNC for these checks in the May 4, 1998 order. As to the checks issued in October 1996, the record establishes that the law firm did not receive its bank statement for October until sometime in the first two weeks of November. Therefore, the record precludes a finding of negligence based on a failure to review bank statements for any check issued and paid in October 1996. As to the remaining check issued on November 20, 1996, any negligence by the law firm may not preclude recovery, if the bank did not exercise ordinary care. On remand, the practice of the bank measured against its procedure must be considered.
Reversed and remanded for further proceedings consistent with this opinion.
NOTES
[1] Oral argument was originally requested by appellant. At the request of the parties, oral argument was waived.