661 A.2d 344

IN THE MATTER OF THE SALE OF LANDS OF ROSE
M. CASTNER, AN ADJUDICATED INCOMPETENT.

Superior Court of New Jersey
Law Division Passaic County

Decided April 3, 1995.

*Mary Tom* for plaintiffs Sandra Vander Ploeg and Lawrence P. Castner, Jr. (*Michael J. Sweeney*, attorney).

*Dennis M. Gonski* for third-party defendant First American Title Insurance Company (*Dennis M. Gonski*, attorney).

*Laura J. Hyman* for defendant Great Falls Bank (*Hyman, Boruch and Hyman*, attorneys).

MARTIN, J.S.C.

Rose Castner was declared incompetent on January 13, 1989, and Rose's husband Lawrence Castner was appointed her guardian. Together, Rose and Lawrence owned a home in Hawthorne, New Jersey, as tenants in the entirety. On May 25, 1989, Lawrence obtained a $200,000 loan from Great Falls Bank (the Bank) which was used to buy commercial property located in Paterson and titled solely in his name. As security for the loan, the Bank was given a mortgage by Lawrence on the Paterson property. The Bank requested additional security for the loan above and beyond the mortgage on the newly-purchased property. In response, Mr. Castner offered mortgages on additional pieces of property, including a mortgage on the Hawthorne residence. Mr. Castner signed the Hawthorne mortgage closing documentation individually and as guardian for Rose. The money was used to relocate his business, Workman's Uniforms, to Paterson. Throughout the course of negotiations for this loan, Mr. Castner, the Bank, and First American Title Insurance Company (the Title Company) which insured the purchased property were each represented by counsel. Mrs. Castner did not have an attorney.

On November 2, 1993, Lawrence Castner died. He is survived by Rose and two children, who are the new co-guardians of Mrs. Castner. By operation of law, Mrs. Castner possesses full title to the property in question. The Hawthorne property has been sold upon court approval of the co-guardians' application. Although it approved the sale of the incompetent's property, the court reserved on the issue of the mortgage's validity and, therefore, the right to the proceeds. The Bank wishes to collect its loan from the proceeds on the now first mortgage position it holds. Plaintiffs in this action, the co-guardians, take the position that the Bank's mortgage is invalid, since Lawrence Castner did not apply for court approval prior to mortgaging his and his wife's property. They argue that the mortgage is invalid due to the mandatory requirement of *R.* 4:94–6 for guardians to secure court approval prior to mortgaging their ward's property. The Bank's response is twofold. Its first position is that the court approval requirement of the rule, when read in light of *N.J.S.A.* 3B:14–23 is not mandatory. Secondarily, the Bank argues that any attempt to interpret the rule as requiring prior court approval would result in the rule's establishing substantive rather than procedural law, according to the distinction made in *Winberry v. Salisbury,* 5 *N.J.* 240, 74 *A.*2d 406 (1950), thereby rendering the rule unconstitutional.

The parties agree that according to *N.J.S.A.* 3B:1–2, as guardian, Lawrence Castner held the position of fiduciary with respect to his ward. The parties also agree that *N.J.S.A.* 3B:14–23 specifically authorizes fiduciaries to exercise certain powers, including the power to mortgage a ward's property under his control:

3B:14–23. **Powers** (of fiduciaries).

  In the absence of contrary or limiting provisions in the judgment or order appointing a fiduciary, in the will, deed or other instrument . . . every fiduciary shall, in the exercise of good faith and reasonable discretion, have the power:

    . . . .

  e. With respect to any property or any interest therein owned by an estate or trust . . .

(4) To mortgage the property.

*N.J.S.A.* 3B:14–23 is part of what is commonly known as the "new probate code", which replaced *N.J.S.A.* title 3A (the "old probate code") in 1982. The old probate code sections which governed the mortgaging of a ward's property, namely *N.J.S.A.* 3A:20–6, 3A:20–7, and 3A:20–8, were substantially different than *N.J.S.A.* 3B:14–23:

**3A:20–6. Borrowing of money on security of estate of minor or mental incompetent for his support and education.**

*When it shall be made to appear to the superior court* that the personal estate and the income of the real estate of a minor or mental incompetent is not sufficient for his proper support and education or that of his spouse, household, family or children, *the court may direct the guardian of the minor or mental incompetent, or a fiduciary holding real estate under a will, deed or other instrument in trust for any such person, to borrow money upon security of the real estate* in this state, or any part thereof or interest therein, belonging to the minor or mental incompetent or held in trust.

(Emphasis added.)

**3A:20–7. Court approval; validity of security.**

*A bond and mortgage, or other security, given by a fiduciary mentioned in section 3A:20–6 of this title, if the court approve thereof,* shall be valid and effectual in law, and, upon delivery, shall vest in the holder thereof all the estate, title and interest of the minor or mental incompetent in and to the real estate, subject, however, to the provisions in the mortgage or other security contained.

(Emphasis added.)

**3A:20–8. Maintenance of mental incompetent; preservation of estate; payment of debts and advances.**

*A guardian of a mental incompetent may, if the superior court approve of it, mortgage* or pledge real or personal estate for the purpose of borrowing money to pay the debts of such mental incompetent, or discharging any encumbrance on his property, or for his maintenance, or for the preservation of his estate, or for the payment of any advances made by the guardian on account of any of the above-mentioned purposes when such advances have been made within 6 years of the commencement of the action to secure such approval.

(Emphasis added.)

By comparison with the new code, the old code provisions are much more detailed in delineating a guardian's scope of power regarding the power to mortgage a ward's land. These statutes clearly require a guardian to gain court approval prior to mortgaging a ward's lands, and provide the specific conditions under which a guardian may be empowered to do so.

The court rule in effect at the time of the old probate code was *R.* 4:94–6. This rule remains in effect today, and in relevant part, has not been changed:

**Mortgage of Lands.**

Actions in the Superior Court under any statute providing for the borrowing of money on the security of, or the exchange of, any real estate of a minor, incompetent or other person, shall be commenced by filing a verified complaint of the guardian or other person authorized to proceed under the statute, and shall conform with the provisions of R. 4:94 insofar as they are applicable. If the action is to mortgage land, the court shall also ascertain the manner in which it is proposed to meet the interest to accrue upon the mortgage. If it appears that the best interests of the minor, incompetent or other person would be promoted by selling the real estate rather than by mortgaging it, the court in its discretion may direct the guardian or other designated person to take such proceedings to sell the whole or any part of the same.

Thus, when read in conjunction with the old probate code, the purpose of *R.* 4:94–6 is to set forth the procedural mechanics a guardian must follow in order to secure the statutory requirement of court approval for a mortgage under the old system.

In 1982, when the probate code was revised, *R.* 4:94–6 remained unchanged. The question raised is: to what extent did the Legislature intend the court to play a supervisory role in connection with guardians mortgaging their wards' lands under the new probate code? Neither party has submitted any legislative history concerning the probate code's revision showing the Legislature's intent regarding this issue. However, the court has compared the language of the old system with that of the new, and determines that the current statutes and rule no longer combine to require a guardian to obtain court approval prior to mortgaging his ward's lands, unless required to do so by the appointing authority.

The various old code statutes both authorized the guardian to mortgage wards' lands and specifically required him to obtain court approval prior to doing so. The new code statute authorizes a guardian to mortgage a ward's land. However, it is silent as to the requirement of a court approval process. The old code language describing the conditions and purposes for which a guardian may mortgage, and the language specifically requiring a

court approval were written out of the new probate code. The court interprets this elimination as an indication that the Legislature intended to eliminate the requirement of court approval.

Nevertheless, given the fact that the rule contemplates a court approval process, the court must interpret the effect of this rule in the new code system. Having been written in light of the old code provisions, the rule dovetails more neatly with the old code statutes *N.J.S.A.* 3A:20–6, 7, and 8 than it does with *N.J.S.A.* 3B:14–23. The old code statutes are ones which in terms of the rule, "provide for the borrowing of money on the security of ... real estate." Additionally, the old code statutes specifically require a guardian to gain court approval as is illustrated *supra.* The applicability of the procedure set forth in the rule is therefore beyond question with regard to the old code; the statute requires court approval and the rule defines the mechanics of that process. However, *R.* 4:96–4 appears to be somewhat of an anachronism in light of the new code provision. *N.J.S.A.* 3B:14–23 is a statute which in the language of the rule "provides for the borrowing of money on the security of ... real estate"; however, unlike its predecessor statutes, it *does not* mention any requirement of a court approval process.

In sum, the court finds that the current probate system operates as follows: The statute provides the guardian with the inherent power to mortgage a ward's estate without obtaining prior court approval—*i.e.,* the statute itself requires no "action in the superior court" which would render the rule's court approval procedures applicable. Thus, *R.* 4:94–6 describes a procedure to secure court approval if and when it is required by court order or the facts involving the guardianship operation; it does not in and of itself require a court approval process prior to mortgaging the incompetent's lands. Because of this interpretation, the court does not need to address the additional question of the rule's constitutionality.

Although the court has interpreted the interplay of the statutes and *R.* 4:94–6 as not requiring a guardian to obtain court

approval prior to mortgaging a ward's land, this analysis does not end the inquiry, since *N.J.S.A.* 3B:14–36 provides that certain sales, encumbrances and transactions are voidable:

**Voidable sales, encumbrances or transactions; exceptions.**

Any sale or encumbrance to the fiduciary, his spouse, agent or attorney, or any corporation or trust in which he has a substantial beneficial interest, or *any transaction which is affected by a substantial conflict of interest on the part of the fiduciary, is voidable* by any person interested in the estate except one who has consented after fair disclosure, unless:

a. The will or contract entered into by the decedent expressly authorized the transaction; or,

b. The transaction is approved by the court after notice to interested persons. (Emphasis added.)

■ The statute is phrased in the disjunctive. The word "or" has the effect of creating distinct parts to the statute. The voidability described in the statute applies equally to the various circumstances described, namely: sales to the fiduciary, encumbrances to the fiduciary, as well as any transactions affected by a substantial conflict of interest on the part of the fiduciary. The Title Company argues that this statute does not apply, emphasizing that there has been no sale or encumbrance to Mr. Castner. However this emphasis ignores an entire section of the statute. The phrase "or any transaction affected by a substantial conflict of interest" extends the effect of voidability to *any transaction*, not just to sales or encumbrances to a fiduciary or organization in which the fiduciary has an interest, as the Title Company suggests. The scope of the statute must be measured in terms of the inherent *parens patriae* doctrine so firmly rooted in our law. The ward's interest, whether personal or via a property interest, must be protected vigorously. *See In re Conroy,* 98 *N.J.* 321, 486 *A.*2d 1209 (1985).

The court finds that the voidability provisions of *N.J.S.A.* 3B:14–36 are applicable in this matter, by reason of the positions of the guardian and ward relative to one another and Mr. Castner's course of action throughout the transaction. As security for a loan to himself, Mr. Castner mortgaged property owned by him and his ward, Mrs. Castner, as tenants by the entirety. The court

finds Mr. Castner's mortgage of his ward's interest in the Hawthorne property and subsequent use of the mortgage money to purchase the Paterson property titled solely in his name to be a "transaction affected by a substantial conflict of interest on the part of the fiduciary" according to the statute. Essentially, the substantial conflict of interest was in Mr. Castner's using his ward's legal interest in her home for his own purpose. The statute provides that voidability does not apply to parties who have consented after full disclosure. However, Mrs. Castner's condition prevented her from either consenting or being given full disclosure of the transaction. Having found the mortgage to be a transaction affected by a substantial conflict of interest on the part of the fiduciary, the court deems the mortgage to be voidable by the substitute guardians as persons who have interests in the estate.

Parts (a) and (b) of *N.J.S.A.* 3B:14–36 provide procedures whereby a fiduciary can insulate a transaction affected by a substantial conflict of interest from voidability. In this instance, Mr. Castner could have followed part (b) of the statute and filed an action according to the procedures of *R.* 4:94–6, seeking court approval of the mortgage and purchase transaction. Such a process would have given the court and interested parties an opportunity to analyze the transaction and evaluate the use of the loan proceeds, to ensure if it was fair to the ward and in her best interests, and to determine the degree of risk presented to the ward, since an incompetent's estate should be cautiously managed. By failing to secure court approval according to *N.J.S.A.* 3B:14–36b prior to entering into the transaction, Mr. Castner left the transaction open to attack.

In *N.J.S.A.* 3B:14–37 the probate code provides a "good faith" exception to the voidability of transactions under *N.J.S.A.* 3B:14–36. In relevant part, *N.J.S.A.* 3B:14–37 states: "a person who in good faith either assists a fiduciary or deals with him for value is protected as if the fiduciary properly exercised his power." The Bank claims that it has dealt with the fiduciary for value

and in good faith and is therefore protected from the voiding of its mortgage transaction. The term "good faith" is not specifically defined for use in this particular section of the code. However, elsewhere in the probate code (Article 7, Uniform Fiduciaries Law, *N.J.S.A.* 3B:14–53e), good faith is given the following meaning: "A thing is done 'in good faith' within the meaning of this article, when it is in fact done honestly, whether it be done negligently or not."

Although good faith is not specifically defined for use in *N.J.S.A.* 3B:14–37, the court is satisfied that the Legislature has imparted a uniform definition of the term as it is used throughout the statutes. Accordingly, the court will follow a definition of good faith under *N.J.S.A.* 3B:14–37 that is consistent with *N.J.S.A.* 3B:14–53e and interpretive caselaw.

Caselaw developing the meaning of good faith emphasizes that good faith is determined by looking to the mind of the particular holder, and not to what the state of mind of a prudent man should have been. *Breslin v. New Jersey Investors, Inc.,* 70 *N.J.* 466, 471, 361 *A.2d* 1 (1976). Thus, New Jersey courts determine good faith by making a subjective evaluation. *Ibid.* In using the aforementioned principles, the court finds that the Bank is not protected as a good faith dealer for value. The court finds a lack of good faith on part of the Bank, since the facts of this case reveal several points which indicate that the Bank's subjective, if not objective, awareness amounted to something less than good faith.

The Bank is a sophisticated investor, and one which is in the business of lending money on the security of mortgages. Additionally, the court notes that all parties involved in this transaction (the Bank, the Title Company, and Mr. Castner), with the notable exception of Mrs. Castner, were represented by attorneys. As such, the Bank is on notice of all laws which impose special requirements when guardianship and other fiduciary relationships are involved in transactions. Mortgages involving guardianships

must, therefore, be handled differently, and with an additional level of scrutiny.

Examination of the interests of title holders to potential security is part of the regular lending process for banks. As the Bank underwent this process in making the loan to Mr. Castner, it discovered the *joint interest the Castners* held in the Hawthorne residence. By analyzing the closing papers, the Bank was also aware of the fact that Mr. Castner was taking the Paterson property solely in his name. Furthermore the mortgage documents indicate that the Bank was aware of the guardian/ward relationship of the Castners. The court must conclude that the Bank was therefore aware of the factors creating the substantial conflict of interest, in addition to the law governing such situations, and cannot be said to have taken the mortgage in good faith as against Mrs. Castner.

The court finds the mortgage encumbrance voidable by reason of equitable concerns as well. The bank knew or should have known via its loan procedures and requirements, as well as the knowledge of its attorney, that the closing was commercial in nature. However, the added security was a *one-family residential* dwelling, one owner of which was an adjudicated incompetent. The incompetency order involved in the adjudication waived the bond requirement, except for the sale of realty. Note in this regard the mortgage resulted in the transfer of equitable title; and the reference in the order, even if only obliquely referring to equitable title, should have alerted the Bank's attorney of the court's concern regarding the real property of the incompetent. Compounding the issue is Mr. Castner's position as the sole beneficiary of the commercial transaction, and Mrs. Castner's lack of representation throughout the entire transaction. The Bank's request to utilize the Hawthorne property as an additional protective layer of security above and beyond the mortgage on the purchased property gives rise to the implied knowledge that this property had a real risk of exposure to possible forfeiture, which has now occurred. The Bank in a sense was therefore responsible

for the creation of the conflict situation when it made this request. However, it did not require Mr. Castner to first obtain court approval in order to insulate the transaction; instead, it took the mortgage, along with the voidability risk the transaction entailed. The court in its equitable power cannot allow the invasion of the ward's limited estate where, as here, the benefit to the ward was practically non-existent without ignoring the *parens patriae* obligation it has to the ward. *Matter of Conroy,* 98 *N.J.* 321, 486 *A.*2d 1209 (1985); *Matter of Grady,* 85 *N.J.* 235, 426 *A.*2d 467 (1981); *Fantony v. Fantony,* 21 *N.J.* 525, 122 *A.*2d 593 (1956); *Johnson v. State,* 18 *N.J.* 422, 114 *A.*2d 1 (1955).

The court holds under the totality of the circumstances that the mortgage transaction is void and the encumbrance of the bank must be removed.