294 N.J. Super. 352 (1996)
683 A.2d 567
JOEL ERENBERG, INDIVIDUALLY, AND AS GENERAL ADMINISTRATOR AND ADMINISTRATOR AD PROSEQUENDUM OF THE ESTATE OF MARC ERENBERG, DECEASED; LILLIAN ERENBERG AND BENJAMIN ERENBERG, HER HUSBAND, PLAINTIFFS-RESPONDENTS,
v.
CARLOS CORDERO, GENERAL MOTORS CORPORATION OF AMERICA, AND ZYZ CORPORATION, DEFENDANTS-APPELLANTS. LESLIE A. NAPOLI, PLAINTIFF-RESPONDENT,
v.
CARLOS CORDERO, GENERAL MOTORS CORPORATION OF AMERICA, AND ZYZ CORPORATION, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued September 17, 1996.
Decided October 22, 1996.
*353 Before Judges PRESSLER, STERN and HUMPHREYS.
Edward J. Fanning argued the cause for appellant General Motors Corporation of America (Tansey, Fanning, Haggerty, Kelly, Convery & Murray, attorneys; Mr. Fanning, of counsel; Sharon McConvery, on the brief).
*354 Richard B. Ansell argued the cause for respondent Joel Erenberg (Ansell, Zaro, Grimm & Aaron, attorneys; Mr. Ansell, of counsel; Stephanie H. Hodach, on the brief).
James P. Patuto argued the cause for respondent Leslie Napoli (Galantucci & Patuto, attorneys; Mr. Patuto, of counsel; Durrell W. Ciccia, on the letter brief).
The opinion of the court was delivered by PRESSLER, P.J.A.D.
Defendant General Motors Corporation of America (GM) moved, on entire controversy grounds, for summary judgment dismissing this consolidated action against it. It appeals, on leave granted, from the denial of its motion, and we affirm.
The entire controversy problem before us arises out of the tragic death of thirteen-year-old Marc Erenberg on March 7, 1992. Marc was a back-seat passenger in a Pontiac Firebird being driven by his stepmother, plaintiff Leslie A. Napoli, on Route 46 in Little Ferry, when the vehicle was struck in a multi-car collision caused by the negligence of the driver of one of the other vehicles, defendant Carlos Cordero, who was driving while intoxicated. Marc died shortly thereafter of the injuries he sustained in the accident. Injuries were also sustained by the other occupants of Napoli's vehicle  Napoli herself; Marc's father, plaintiff Joel Erenberg; and Marc's grandmother, plaintiff Lillian Erenberg. Cordero was convicted in the Law Division, Bergen County, of death by auto.
The multi-state litigation that followed is attributable, at least in substantial part, to the fact that Marc's parents are divorced. At the time of the accident Marc was living with his mother Lois Erenberg in Westchester County, New York, and was with his father, a resident of Fort Lee, New Jersey, for a visit. Shortly after the boy's death, Lois Erenberg petitioned the Westchester County Surrogate for letters of limited administration authorizing her to commence a personal injury and wrongful death action on *355 behalf of Marc's estate. After Joel Erenberg was noticed, letters were issued to Marc's mother on April 24, 1992, just six weeks after the tragedy. She commenced an action as administratrix against Cordero and Napoli and the drivers of the other two cars involved in the collision in Bronx County, Cordero's place of residence, on June 5, 1992. Joel Erenberg was named in the complaint as among Marc's next of kin but was not a party to the action. Napoli, although a defendant, did not file any cross-claims or third-party complaints. The action was ultimately settled by the payment by Cordero's liability carrier of his policy limit of $50,000 and the payment by Napoli's liability carrier of $50,000 under the underinsured motorist (UIM) clause of her policy. According to New York practice, the settlement was authorized by a decree of the Westchester County Surrogate's Court, entered in November 1993, confirming the mother's petition therefor filed on July 30, 1993. The proceeds of the settlement, after deduction of attorney's fees and expenses, were shared equally by the parents.
In the meantime, matters were proceeding in New Jersey with respect to other claims by Erenberg family members arising out of the accident that had not been raised in the New York action. Primary among these claims was the second-collision claim against GM, the manufacturer of Napoli's vehicle, based on the contention that the seat belt Marc was wearing at the time of the accident was defective either in manufacture or design and that it was the defective seat belt which caused the internal injuries from which Marc died. These claims were raised in two separate actions in New Jersey, both filed after the date of Lois Erenberg's petition in New York for the approval of the settlements. The first of the New Jersey actions was instituted on August 12, 1993, by Joel Erenberg, individually and as administrator ad prosequendum of Marc's estate.[1] The second was instituted on February 4, 1994, by Napoli.
*356 In their respective actions, thereafter consolidated, Napoli and Joel Erenberg each sought recovery from GM and the fictitiously named manufacturer of the seat belt for the emotional distress damages each allegedly sustained as a result of having witnessed Marc's death. See Portee v. Jaffee, 84 N.J. 88, 417 A.2d 521 (1980). Joel Erenberg, as administrator ad prosequendum, also sought survivor and wrongful death damages against GM based on the allegedly defective seat belt. Both Napoli and Erenberg also sought damages for their own personal injuries from GM on an unspecified products liability theory.
The question raised is whether the entire controversy doctrine bars the prosecution in New Jersey of the suit against GM by Napoli and by Erenberg, both individually and as administrator ad prosequendum. The trial court concluded that it did not, and we agree.
In broad terms, the present contours of New Jersey's unique entire controversy doctrine require parties to an action not only to raise in that action all claims they may have against each other arising out of the subject transaction but also to join all non-parties subject to the court's jurisdiction against whom additional accrued claims arising out of that transaction may be asserted. See generally Circle Chevrolet v. Giordano, Halleran & Ciesla, 142 N.J. 280, 662 A.2d 509 (1995); Cogdell v. Hospital Center at Orange, 116 N.J. 7, 560 A.2d 1169 (1989). The doctrine has also been construed as barring a subsequent suit in the courts of this State if there was a prior action in another forum in which non-parties sought to be sued here were there joinable. Mortgagelinq Corp. v. Commonwealth Land Title, 142 N.J. 336, 343-345, 662 A.2d 536 (1995). We are aware of the New Jersey Supreme Court's continuing commitment to an expansively embracing entire controversy doctrine for the purposes of avoiding fragmentation of litigation, achieving expediency in the disposition of controversies for the benefit of the civil justice system as a whole, and sparing litigants  both present and prospective  from undue harassment, expense, and other burden. See, e.g., Prevratil v. *357 Mohr, 145 N.J. 180, 187, 678 A.2d 243 (1996). But the Supreme Court has also recognized that since the doctrine is equitably rooted, "its application is left to judicial discretion based on the particular circumstances inherent in a given case." Mystic Isle Development Corp. v. Perskie & Nehmad, 142 N.J. 310, 323, 662 A.2d 523 (1995). See also Prevratil, supra, 145 N.J. at 190, 678 A.2d 243, noting that "equitable considerations can relax mandatory-joinder requirements when joinder would be unfair." As we understand the doctrine, chief among these equitable considerations is the full and fair opportunity of the party sought to be precluded in the second action to have raised the claim there asserted in the original action. That consideration, together with the evident lack of prejudice to the defendant in the second action, militates against the doctrine's application here.
We consider, in the context of these principles, the sole question before us, namely, whether GM, not having been joined in the New York action brought by Marc's mother as administratrix ad prosequendum, may be sued in New Jersey by Marc's father, who was not a party to the New York action; by Marc's estate, which was a party plaintiff; and by Marc's stepmother, who was a nominal party defendant. We hold that in the circumstances here, the suit in New Jersey by each against GM is not barred by the entire controversy doctrine.
Resolution of the issue requires some further reference to the New York proceeding. To begin with, that suit was controlled by Marc's mother as administratrix. The record leaves no doubt that her desire was to obtain the available insurance proceeds with as little involvement on her part or protraction of the proceedings or other complication as was possible. As early as July 28, 1992, little more than a month after the New York suit was commenced, Joel Erenberg's New Jersey attorney, Richard B. Ansell, discussed the scope of the suit with Lois Erenberg's New York attorney, Mark Oxman. The gist of their conversation, recorded contemporaneously by Ansell, was that Cordero's carrier had already offered its $50,000 policy limit and negotiations were *358 pending with Napoli's carrier for payment under her UIM protection. Although Ansell at least suspected a potential products liability claim at the time, he noted that Oxman "does not want to pursue other claims  we can if we want."
The New York action lasted another year. There is no question from this record that the delay was due only to the UIM claim made by Marc's estate against the Napoli policy, the carrier, apparently, having insisted on its arbitration rights. That proceeding was concluded in mid-June 1993 by an award, uncontested by the carrier, in the estate's favor for the full available amount of $50,000. That award effectively concluded the New York action, resulting in a total recovery of $100,000 for the estate. During that year, however, Ansell continued to communicate with Oxman regarding what Ansell now was satisfied was a viable seat belt claim against GM. He advised Oxman of the father's concern that the mother was refusing to raise that matter in the New York suit and requested Oxman to consider appointment of the father as a co-administrator in New York in order to give him some control of the litigation. In April 1993, while collection of insurance proceeds, the estate's sole interest, was still pending, Ansell wrote again to Oxman, advising as follows:
[M]y client has again expressed to me some concern over your proposal to settle portions of the case concerning Marc's death.
I do think there is a viable cause of action because of the seat belt situation, and the ability to prosecute that claim, at least in New Jersey, may be precluded or compromised because of the prior settlements.
Do you intend to pursue a claim against General Motors?
I understand and appreciate that your client is anxious to receive her share of the available insurance proceeds. However, I think you have to analyze the legal situation to ensure that other claims are not jeopardized.
Please call to discuss.
Finally, I note that you have not gotten back to me concerning my client's request that he be made co-administrator. You told me that you would not oppose such an application once you confirmed that my client had an equal right to serve with your client in that capacity.
Please call to discuss this aspect as well.
Not receiving a satisfactory response, Ansell again wrote to Oxman in June 1993, as follows:

*359 [W]e are preparing to institute suit on behalf of Joel Erenberg and Lillian Erenberg, his mother, both of whom were passengers.
What are you going to do with Marc's claim against General Motors for the seat belt defect?
We must decide right away whether Mr. Erenberg should qualify as Administrator Ad Prosequendum in New Jersey. If so, your client will have to sign certain renunciations.
You and your client refused to allow Mr. Erenberg to be a co-Administrator in the New York action. I really do not want to have to deal with Lois Erenberg were we to represent Marc's potential claim.
It is imperative that we resolve these issues at this time.
Oxman's reply reiterated Lois Erenberg's refusal to so proceed in New York although she was not averse to Joel Erenberg pursuing that claim in New Jersey. Ultimately, therefore, Joel Erenberg did not interpose an objection to the Westchester County Surrogate Court's approval of Lois Erenberg's settlement with the two carriers for which she petitioned in July 1993.
Leslie Napoli's involvement  or rather, her lack of involvement  in the New York action is detailed in the certification of her New Jersey attorney, James P. Patuto. According to his certification, it took almost a year for her carrier to appoint an attorney to represent her in defense of the New York suit. Patuto had, from the outset of Napoli's joinder therein, challenged New York's personal jurisdiction over her, first by so advising her carrier directly and then the attorney finally designated by it to represent her. The accident had, after all, occurred in New Jersey, and Napoli was a New Jersey resident. Patuto also made clear, first to the carrier and then to the attorney, that Napoli had an affirmative claim against Cordero which she was not intending to waive. Moreover, Patuto asserted that the Bergen County prosecutor had requested both Napoli and Erenberg to withhold civil action against Cordero in the event it might prejudice the pending death-by-auto prosecution. In the end, Napoli was never personally involved in the New York litigation, her affirmative claims were entirely ignored, her lawyer assigned by her carrier never communicated either with her or Patuto, she never appeared either in court or for pretrial discovery, she was never even asked for a statement, and she was never advised of the *360 settlement of Lois Erenberg's action. Obviously, the "defense" of the New York action was simply a matter of the two carriers paying policy limits on outstanding insurance coverage.
We think the foregoing recitation is by itself sufficient to demonstrate the unfairness of an application of the entire controversy doctrine to bar the suit of any of the New Jersey plaintiffs against GM. In considering the situation of each of them, we note that a question of preclusion would not even arise if the principles of the Restatement (Second) of Judgments (1982) had not been modified in New Jersey by our mandatory joinder rule, the entire controversy doctrine. See R. 4:30A. The fact that GM was neither a party to the New York action, nor in privity with, nor represented by a party to that action would, absent that doctrine, be dispositive of the right of those who were parties to proceed against GM in a subsequent action. See Restatement, supra, § 49 and § 49 comment a; see also id. § 17(3) comment c, § 34, and Chapter 4 introductory note. Moreover, with respect to the claims by the Estate of Marc Erenberg, the Restatement rule is that the settlement with one tortfeasor does not preclude a subsequent action against a non-party joint tortfeasor provided total damages remain unadjudicated.[2]See id. § 49 comment a, § 50, and § 50 comment d.[3] The Restatement rules have, of *361 course, been substantially modified by the requirement of Cogdell and its progeny that all claims against all potential tortfeasors must be joined unless equitable considerations dictate to the contrary. We agree with the trial court's perception that such considerations obtained here in respect of the seat belt claim against GM.
First, we are satisfied that the entire controversy doctrine does not apply to Joel Erenberg's individual claims against GM at all. As far as we have been able to determine, the doctrine has not yet been extended to require a non-party having an affirmative claim against a defendant in pending litigation to seek to intervene in that litigation in order to preserve his own rights against that defendant  to say nothing of having to seek to intervene in order to preserve his rights against a tortfeasor who is not even a party-defendant to that pending litigation.
With respect to Napoli's claim against GM, we point out first that the question of her right to proceed in New Jersey against Cordero, who was her co-defendant in New York, is not before us. The Prevratil holding, which addresses unjoined claims among parties rather than claims against non-parties, is therefore not here implicated. We are here concerned only with her right to sue GM, which was not a party to the New York action, in New Jersey. We do not see how she can fairly be deprived of that right in view of her undisputed utter helplessness in the New York litigation and the effective deprivation of her opportunity to present any affirmative claim therein. We think it plain that her role in that action was purely nominal  she was there so that the estate could recover under her UIM coverage. She was afforded *362 no right to litigate any affirmative claim on her own behalf and clearly did not intend to waive that right.
With respect to the estate's claim against GM, we recognize that the estate was the party-plaintiff in New York. But the litigation was controlled by Marc's mother, who rejected the requested expansion of the litigation to include his father as a co-administrator and to include the claim against GM. She was willing to sue to obtain an essentially uninvolving recovery of insurance proceeds. She evidently refused, as a matter of her own emotional needs, any further and protractive litigation engagement on her own part. In these circumstances, the father's decision to leave the claim against GM for another day without subjecting the mother to the difficulties, strains and burden of herself prosecuting it must be regarded as both prudent and humane. We note further that in view of the constraints placed upon the litigation by Lois Erenberg, the litigation itself was tantamount to nothing more than settlement negotiations. None of the adversarial engagements of litigation appear to have taken place or were even contemplated. Nor can it be fairly said that by his action or non-action in New York, Erenberg waived the estate's claim against GM.
We are also satisfied that the anti-fractionalization policy underlying the entire controversy doctrine is served by the prosecution in New Jersey of this consolidated action against GM. That is to say, in our view, even an expansive reading of the doctrine would not bar Joel Erenberg from suing GM individually in New Jersey. He was not a party to the New York action and not required to intervene therein. If that is so, then his suit against GM would have proceeded in New Jersey in any case. We think it plain that the interests of both judicial administration and of all of the parties are best served by a single action against GM arising out of the claim that the seat belt defect contributed substantially to Marc's death. Thus, if there were going to be any suit in New Jersey at all on that claim, it would be far preferable for all the plaintiffs raising that claim to do so in a single action rather than *363 permitting Joel Erenberg's action to proceed here at the same time the same claim was being litigated in New York by the estate and Napoli, assuming of course, which we doubt, that that claim could have been effectively raised at all in New York in view of Lois Erenberg's recalcitrance and Napoli's insurer's insistence on controlling the litigation involving its policy while at the same time frustrating Napoli's opportunity to pursue affirmative rights.
Finally, we have considered GM's situation as well. We are satisfied that the litigation here in no way unduly prejudices its litigation interests. The New Jersey plaintiffs were free to commence this action against it at any time within the two-year limitations period. Its not having been named a party to the New York action had, in our view, no different consequence than if the Cordero and Napoli carriers paid the policy limits without suit having to be brought at all in New York. Nothing, in that event, would have been precluded. And if that had been the case, there would be no basis at all for GM to raise the specter of the entire controversy doctrine. We are persuaded, under the circumstances here, that that is all that the New York litigation really was  a settlement of claims by carriers conducted under the aegis of the Westchester County Surrogate's Court.
The order appealed from is affirmed.
STERN, J.A.D., concurring.
I join the opinion of the court, but write separately to address the impact of Mortgagelinq Corp. v. Commonwealth Land Title Ins. Co., 142 N.J. 336, 662 A.2d 536 (1995), with respect to this litigation.
Mortgagelinq involved a New Jersey case following a federal action filed in the United States District Court for the Eastern District of Pennsylvania. In the Pennsylvania action, plaintiffs Mortgageling, a mortgage lender, and the Federal Home Loan Mortgage Corporation (Freddie Mac) sued Pennsylvania land dealers for manipulating the sale price of land (most of which was located in New Jersey) in order to defraud plaintiffs. The New *364 Jersey action involved the same land transactions, but here plaintiffs charged different defendants, "three title insurance companies, a title agency, and three individuals alleged to be employees of either the title insurance companies or the title agency," who assisted in perpetrating the fraud. Mortgagelinq, supra, 142 N.J. at 340, 662 A.2d 536. In light of these circumstances, our Supreme Court held that the New Jersey action was precluded under the entire controversy doctrine. But the Court's holding is narrow: it held "that when a party deliberately chooses to fragment litigation by suing certain parties in another jurisdiction and withholds claims against other parties, a New Jersey court need not later entertain the claims against the omitted parties ... if jurisdiction was available in the first forum" and the parties and claims could have been joined there. Id. at 338, 662 A.2d 536 (emphasis added).
I will presume that there was in personam jurisdiction over General Motors (GM) in New York and that, under appropriate choice of law principles, the claims of the New Jersey plaintiffs could have been pursued in New York. Nevertheless, I do not read Mortgagelinq as barring a New Jersey action based upon proceedings in a foreign jurisdiction in which the New Jersey plaintiff was not a party, much less party plaintiff. Hence, even though Joel Erenberg may have known of the existence of the New York action and benefitted from its settlement by obtaining a statutory share of the proceeds, Mortgagelinq does not bar his individual action in New Jersey.
Further, in concurring with respect to the New Jersey action of Leslie Napoli, I do not read Mortgagelinq as barring even a subsequent New Jersey action otherwise barred here under Prevratil v. Mohr, 145 N.J. 180, 678 A.2d 243 (1996), for failure to join claims, where the New Jersey plaintiff was represented as a defendant in the foreign action by a designee of the carrier, at least in the absence of any indication in the record that the carrier gave the type of notice required by Prevratil with respect to the requirement of asserting a counterclaim (and third party claim) in *365 the foreign action. Prevratil v. Mohr, supra, 145 N.J. at 195-96, 678 A.2d 243. Hence, the defendant represented by the carrier's designee in New York cannot be precluded from asserting claims against a new party in New Jersey (unless precluded by traditional concepts of issue or claim preclusion) for failing to file a third party complaint in New York.
The impact of Mortgagelinq on the ability of Marc's estate to bring an action against GM in New Jersey, in light of the action on behalf of the estate in New York, is more difficult to resolve. I will assume, for the reasons expressed by the majority opinion, that the New York action was commenced because Marc was a minor and court approval had to be obtained in order to implement the settlement. And I will further assume that the New York action was commenced only for purposes of obtaining the policy proceeds. But Joel Erenberg was aware of the New York action, and indeed through counsel expressed great concern about its impact on an ability to go forward in New Jersey against GM. Yet, as already noted, there is no contest before us that there was both in personam jurisdiction over GM in New York and that, under relevant choice of law principles, the estate could have pursued its claim against GM for the defective seat belt. Furthermore, Erenberg knowingly and voluntarily decided to forgo any endeavor to become a co-administrator in the New York action, and also elected not to prevent the disposition of the New York matter and to voluntarily accept his statutory proceeds as father, therefore benefitting from the disposition of the estate action in New York.
Moreover, this action was not filed until after the New York case was disposed and Erenberg could have filed the New Jersey action prior to the New York disposition and allowed the New Jersey court to consider a management plan (even though that plan would not have been binding on the New York court). Cf. Circle Chevrolet Co. v. Giordano, Halleran & Ciesla, 142 N.J. 280, 293, 662 A.2d 509 (1995) (noting that "a trial court will consider the effects of joinder ... when dealing with case management"); *366 DiTrolio v. Antiles, 142 N.J. 253, 275, 662 A.2d 494 (1995) (noting that "[i]t is the trial court's responsibility to determine whether or not joinder is appropriate in a given case").
Nevertheless, I concur in the opinion of the court regarding the estate's action because I read Mortgagelinq to apply to a unique factual situation and procedural history with an available remedy which a reversal here would not permit. While our Supreme Court affirmed dismissal of the New Jersey action on entire controversy grounds, it expressly reversed the judgment of this court "insofar as it dismissed the complaints with prejudice." Mortgagelinq, supra, 142 N.J. at 348, 662 A.2d 536. The Court noted that a second action had been filed by plaintiffs in the United States District Court for the Eastern District of Pennsylvania against the New Jersey defendants (after disposition of the first federal action),[1]id. at 342, 662 A.2d 536, and that the impact of the prior dispositions should be decided by the federal court in light of the res judicata impact of its first disposition and the dismissal, without prejudice, of the State action. Id. at 347-48, 662 A.2d 536. Significantly, the Court noted that "[t]here is a powerful federal interest in the vindication of the rights of a federally-created mortgage-lending agency," and assumed "that the federal court will carefully consider the vindication of that interest." Id. at 348, 662 A.2d 536.
While it may be arguable that Joel Erenberg, the New Jersey administrator, deliberately chose to fragment the litigation on behalf of the estate, this case does not involve any ability of the estate to vindicate its interest under the law of New Jersey, where the accident occurred and the child died, if we dismiss the estate's New Jersey complaint. I, therefore, concur in the opinion of the court.
NOTES
[1] Joel Erenberg's parents, Lillian and Benjamin Erenberg, joined as plaintiffs in that action, but we were advised at oral argument that all claims by Lillian and Benjamin Erenberg have been resolved, and we address them no further.
[2] The bar imposed by the single-recovery rule applies, according to the Restatement, only when the amount of damages has been adjudicated, thereby fixing the total amount of damages which the plaintiff may recover irrespective of how many tortfeasors there may be. If the full amount has been paid by fewer than all of the tortfeasors, plaintiff is precluded from seeking further recovery against the others. See comment d on § 50. The total amount of damages was never here adjudicated. See also Theobald v. Angelos, 44 N.J. 228, 239, 208 A.2d 129 (1965). Hence the single-recovery rule does not apply.
[3] We are aware that § 49 comment a of the Restatement (Second) of Judgments (1982) cautions that "[t]he injured party's right to maintain separate actions against multiple obligors" is subject to several important constraints. The specified constraints are that a party may not relitigate issues determined against him in the first action and that "[i]n some circumstances, the rules governing joinder of parties require that all those liable be joined as defendants, see, e.g., Restatement, Second, Contracts § 290, although in general such joinder is permissive." Section 290 of the Restatement (Second) of Contracts (1982) addresses only compulsory joinder of joint promisors. It is not a rule dealing with joint tortfeasors. Moreover, we see nothing in the record that would except this case from the applicability of § 49 of the Restatement (Second) of Judgments were the Restatement rules applicable in New Jersey and not substantially modified by Cogdell.
[1] Plaintiffs opposed the Pennsylvania defendants' motion to join the New Jersey defendants in the first federal action, and their motion was denied. Mortgagelinq, supra, 142 N.J. at 340-41, 662 A.2d 536. Plaintiffs did not initiate the New Jersey action until the time for permissive joinder in the federal proceedings had expired. Id.