695 A.2d 762

VILLA CONTRACTING CO., INC., PLAINTIFF, v. SUMMIT BAN-
CORPORATION (IMPROPERLY PLEADED AS THE SUMMIT
BANCORPORATION, A CORPORATION OF THE STATE OF
NEW JERSEY D/B/A THE SUMMIT TRUST COMPANY AND/OR
SUMMIT BANK), DEFENDANTS.

Superior Court of New Jersey
Law Division (Civil)
Union County

Decided December 20, 1996.

*Paul R. Williams, Jr.,* for plaintiff.

*Marna L. Brown,* for defendant.

MENZA, J.S.C.

Defendant Summit Bank moves for summary judgment, contending that it is not obligated to reimburse the plaintiff for amounts it charged to plaintiff's account when the bank made payment on checks that were later found to be forged. Plaintiff Villa Contracting opposes the motion.

The facts are these:

Plaintiff's employee, Lisa Tso, and her friend Kevin J. Vargas, were arrested, and eventually prosecuted, for forging company checks and converting the funds to their own use. The forged checks included at least two that were drawn on an account plaintiff Villa Contracting maintained with defendant Summit Bank. Defendant bank paid these checks in April of 1994.

In August of 1994, plaintiff commenced an action against Tso and Vargas, attempting to recover some of the embezzled funds, which allegedly remained in accounts with United Jersey Bank and First Fidelity Bank. The action resulted in a settlement on December 9, 1994, in which plaintiff received 53% of the funds from said accounts and the New Providence Board of Education, Tso's previous employer, received 47% of the funds.

Plaintiff then commenced this action on July 11, 1996, almost two years later, alleging that defendant Summit Bank breached the parties' deposit contract by charging its account for the bank's payment of the forged checks.

Defendant Summit Bank contends that it is not liable to plaintiff for two reasons. First, defendant contends that the plaintiff's claim is barred by the entire controversy doctrine, because the plaintiff should have made defendant bank a party to the plaintiff's 1994 action against Tso and Vargas. Defendant asserts that it obviously had a significant interest in the previous action and that it has been prejudiced as a result of not being made a party to said action. Thus, defendant contends that this is an instance where the entire controversy doctrine should be applied to bar plaintiff's claim.

Second, defendant contends that plaintiff failed to comply with the requirements of *N.J.S.A.* 12A:4–406(4), because it did not report the forged checks to the bank within one year of the date the bank statement, in which the those checks were included, was made available to it.

For these reasons, defendant contends that summary judgment should be granted in its favor.

Plaintiff responds that the entire controversy doctrine does not bar the instant claim because the 1994 action was not an "adversarial proceeding." Plaintiff states that the prior action was brought merely to allow it and the New Providence Board of Education to obtain the funds from the embezzlers' bank accounts, as such accounts had been frozen. All that had to be worked out between plaintiff and the Board of Education was the proper distribution of said funds, and therefore the action was not an "adversarial proceeding." Plaintiff contends that the entire controversy doctrine does not require that all interested parties be joined in non-adversarial actions, and that its claim against Summit Bank is therefore not barred.

Further, plaintiff contends that George Villa, the director of the plaintiff business, did inform the defendant of the forged checks within the one year statutory period. It contends that George Villa spoke with or met with employees of the defendant bank four or five times after he discovered that Tso had embezzled funds by forging company checks. On these occasions, George Villa informed the bank of the embezzlement and noted that several forged checks were drawn on plaintiff's account with the defendant bank. It is plaintiff's contention that the above actions satisfied the notice requirement of *N.J.S.A.* 12A:4–406(4), and that summary judgment therefore should not be granted.

### Entire Controversy Doctrine

The entire controversy doctrine requires that all claims against all parties with a significant interest in those claims be brought in one proceeding at one time. *Circle Chevrolet v. Giordano, Halleran & Ciesla*, 142 *N.J.* 280, 662 *A.*2d 509 (1995).

The application of the doctrine is embodied in *R.* 4:30A, which provides:

Non-joinder of claims or parties required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine. . . .

If some of the forged checks that were the subject of the plaintiff's 1994 litigation against Tso and Vargas were drawn on a Summit Bank account, it is clear that the defendant Bank had a significant interest in that litigation. However, since the entire controversy doctrine is an equitable doctrine, "it's applicability is left to judicial discretion based on the particular circumstances inherent in a given case." *Mystic Isle Development Corp. v. Perskie & Nehmad,* 142 *N.J.* 310, 323, 662 *A.*2d 523 (1995). Plaintiff contends that this court should use its discretion to allow the suit against Summit Bank to proceed, relying on the Appellate Division's decision in *Erenberg v. Cordero,* 294 *N.J.Super.* 352, 683 *A.*2d 567 (1996), decided and approved for publication Oct. 22, 1996.

In *Erenberg,* a child was killed when an automobile driven by his step-mother collided with another vehicle. The child's natural mother filed personal injury and wrongful death claims in New York (where the mother resided) on behalf of the child's estate. The claims were made against the drivers of the two vehicles, and were settled by the drivers' insurance carriers. General Motors was not made a party to the suit.

Subsequently, the child's father, step-mother, and the child's estate, brought a claim in New Jersey court against General Motors. General Motors argued that the claims were barred by the entire controversy doctrine, but the court held that the "equitable considerations ... militate[d] against the doctrine's application ..." and allowed the claims against GM to proceed. The court stated as follows:

First, we are satisfied that the entire controversy doctrine does not apply to [the father's] individual claims against GM at all.... the doctrine has not yet been extended to require a non-party having an affirmative claim against a defendant in pending litigation to seek to intervene in that litigation in order to preserve his own rights against that defendant.

With respect to [the step-mother's] claim against GM, ... we do not see how she can fairly be deprived of that right in view of her undisputed utter helplessness in the New York litigation and the effective deprivation of her opportunity to present any affirmative claim therein. We think it plain that her role in that action was purely nominal—she was there so that the estate could recover under her UIM

coverage. She was afforded no right to litigate any affirmative claim on her own behalf and clearly did not intend to waive that right.

With respect to the estate's claim against GM, we recognize that the estate was the party-plaintiff in New York. But the litigation was controlled by [the child's mother], who rejected the requested expansion of the litigation to include his father as a co-administrator and to include the claim against GM. *Id.* at [362] 11–12 [683 *A.*2d 567].

The court further stated:

We note further that in view of the constraints placed upon the litigation by [the child's mother], the litigation itself was tantamount to nothing more than settlement negotiations. None of the adversarial engagements of litigation appear to have taken place or were even contemplated.

We are satisfied that the litigation here in no way unduly prejudices [GM's] litigation interests. *Id.* at [362] 13–14 [683 *A.*2d 567].

Plaintiff relies on *Erenberg* for the proposition that when the previous litigation was conducted in a non-adversarial manner, the entire controversy doctrine will not bar a later suit when the defendant in such a suit has not been unduly prejudiced. However, as is clearly evident in the quoted passages above, the court's decision cannot be characterized as resting solely or even mainly on such a proposition.

The facts, circumstances, and equitable considerations in this case are far different from those in *Erenberg.* In *Erenberg,* the child's father was not a party to the prior litigation and the stepmother was a nominal party who was deprived of her opportunity to present any affirmative claims. Further, the litigation of the estate's claim was controlled by the child's natural mother, who rejected the proposed expansion of the litigation to include a claim against GM. Here, plaintiff Villa Contracting was a party-plaintiff to the initial litigation, and it has presented no evidence that it was deprived of an opportunity to present a claim against Summit Bank. Further, plaintiff, along with the New Providence Board of Education, was in control of the prior litigation, and there is no indication that Villa ever mentioned impleading Summit Bank in that action, or that the Board rejected such a proposal. In fact, it appears that plaintiff Villa Contracting made a conscious decision not to implead Summit Bank into the prior action. Thus, the

equitable considerations that were so important in *Erenberg* are plainly lacking here.

Further, this court finds that Summit Bank was unduly prejudiced when it was not included in the prior litigation. A bank has a common law right to set-off against a customer's account. Plaintiff Villa Contracting admits that some of the restrained funds in Tso and Vargas' bank accounts were from Vargas' account with defendant Summit Bank. If defendant bank had been made a party to the 1994 action, it could have exercised its common law right of set-off against the funds in Vargas' account pursuant to *Tumarkin v. First Nat. State Bank of New Jersey,* 142 *N.J.Super.* 304, 361 *A.2d* 550 (App.Div.1976). However, defendant Bank cannot now exercise its right, and was deprived of the ability to do so in 1994 because of the plaintiff's choice of litigation tactics.

Defendant Summit Bank has also been unduly prejudiced in another way. If the bank had been made a party to the 1994 action, it would have been able to bring cross-claims against Tso and Vargas before Tso had been indicted and pled guilty to embezzlement and conversion of funds. Again, due to plaintiff's litigation tactics, defendant Bank was deprived of the ability to assert such a claim.

Therefore, since Villa Contracting's 1994 complaint against Tso and Vargas listed checks # 3646 and 3668, the very checks at issue in the instant matter, as among the converted and embezzled funds, yet still chose not to include Summit Bank in the 1994 action, this court can only conclude that plaintiff's claim against Summit Bank is barred by the entire controversy doctrine. Defendant Bank clearly had a significant interest in the 1994 litigation, and suffered undue prejudice as a result of being excluded from said litigation. For those reasons, plaintiff's claim against Summit Bank must be barred.

### Compliance with N.J.S.A. 12A:4–406

Even if plaintiff's action against defendant Summit Bank was not barred by the entire controversy doctrine, this court finds

that the action would still be dismissed because plaintiff has failed to comply with *N.J.S.A.* 12A:4–406, which requires a customer to notify his bank, within a certain period of time, of the *specific checks* which were allegedly forged.

*N.J.S.A.* 12A:4–406 provides:

(1) When a bank sends to its customer a statement of account ... the customer must exercise reasonable care and promptness to examine the statement and items to discover his unauthorized signature or any alteration *on an item* and must notify the bank promptly after discovery thereof.

(4) Without regard to care or lack of care of either the customer or the bank a customer who does not *within one year from the time the statement and items are made available to the customer (subsection (1)) discover and report his unauthorized signature* or any alteration on the face or back *of the item* ... *is precluded from asserting against the bank such unauthorized signature....* (emphasis added).

The statute requires a customer to discover a forged signature *on an item* and to report his unauthorized signature on that item to the bank within one year from the time the statement and items are made available to him. Thus, it is clear that the customer must deal in specifics rather than generalities. In other words, in order to satisfy the statute, he must notify the bank of exactly which items bear the forged signatures. In support of its contention that it complied with the statute in this matter, plaintiff relies on the affidavit of its director, George Villa, which states that on four or five occasions within the statutory period, he told employees of defendant bank that some of the company's checks drawn on accounts with defendant bank had been forged. Plaintiff further provides a document which lists all of the forged checks, and George Villa certifies that, "All these checks were drawn on Summit Bank accounts, as set forth on the attached list that we compiled."

However, George Villa did not represent that he ever provided defendant bank with the list of forged checks, and did not represent that he informed defendant bank's employees, within the period of time prescribed by *N.J.S.A.* 12A:4–406(4), of the specific checks which bore forged signatures. Thus, there is no evidence that plaintiff informed defendant bank, within the statutory time

period, that the *specific checks* that form the basis of this litigation bore forged signatures. Therefore, plaintiff's claim is barred by *N.J.S.A.* 12A:4–406 and must be dismissed.

### Conclusion

In conclusion, plaintiff's claim is barred by both the entire controversy doctrine and *N.J.S.A.* 12A:4–406. For these reasons, summary judgment is hereby granted in favor of defendant.